IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TWIN FALLS NSC, LLC, a Tennessee limited liability company, | ) ) ) |
| Plaintiff/Counter-defendant, | ) ) ) |
| vs. | ) ) |
| SOUTHERN IDAHO AMBULATORY SURGERY CENTER, LLC, an Idaho limited liability company, | ) ) ) ) ) |
| Defendant/Counter-claimant. | ) ) ) |

Case No: 1:19-cv-00009-DCN

**MEMORANDUM DECISION AND ORDER**

# I. INTRODUCTION

Plaintiff/Counter-defendant Twin Falls NSC, LLC ("Twin Falls") filed a Complaint and Application to confirm a final arbitration award (Dkt. 1) issued in an arbitration with Defendant Southern Idaho Ambulatory Surgery Center, LLC ("Sawtooth"). The arbitration award became final on January 7, 2019. Sawtooth filed a Counter-Petition to vacate the arbitration award (Dkt. 8), alleging the arbitrator refused to provide Sawtooth with access to critical evidence, refused to consider dispositive evidence submitted by Sawtooth during the arbitration proceedings, and committed manifest disregard of the law. In the alternative, Sawtooth suggests the Court must remand to the arbitrator for clarification and modification because the arbitration award is incomplete, ambiguous and contradictory. Twin Falls thereafter filed a Motion to Confirm the arbitration award (Dkt. 12) and a Motion to Dismiss Sawtooth's Counter-Petition (Dkt. 13). Sawtooth responded with its

own Motion to Vacate/Modify the arbitration award (Dkt. 22). The Court held oral argument on the motions on July 18, 2019.

Because Sawtooth fails to satisfy the extremely narrow circumstances under which a final arbitration award can be vacated or remanded under the Federal Arbitration Act, 9 U.S.C. §§ 10 and 11 ("FAA"), the Court GRANTS Twin Falls' Motion to Confirm Arbitration Award (Dkt. 12), DENIES Sawtooth's Motion to Vacate and/or Modify Arbitration Award (Dkt. 22), and MOOTS Twin Falls' Motion to Dismiss. (Dkt. 13).

## II. FACTS

On June 27, 2018, Sawtooth initiated an arbitration proceeding with the American Arbitration Association ("AAA") against Twin Falls by filing an arbitration demand. Sawtooth asserted claims for breach of contract, breach of fiduciary duty, declaratory judgment, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, negligent misrepresentation, unjust enrichment, fraud, failure to turn over corporate records, and an accounting. The parties were required to arbitrate their disputes pursuant to the "Second Amended and Restated Operating Agreement of Southern Idaho Ambulatory Surgery Center" (hereinafter "Operating Agreement"). Dkt. 1, Ex. 4. On July 3, 2018, Twin Falls filed its Answer, along with a counterclaim for breach of contract against Sawtooth.

On July 17, 2018, the AAA appointed former Arizona Superior Court Judge Rebecca A. Albrecht as arbitrator in the matter (hereinafter the "Arbitrator"). Pursuant to the expedited schedule provided in the Operating Agreement, and after a prehearing conference with the Arbitrator on June 20, 2018, the parties agreed to submit dispositive

motions by August 15, 2018. Dkt. 1, Ex. 7. On August 28, 2018, the Arbitrator granted summary judgment in favor of Twin Falls on Sawtooth's claims for declaratory judgment, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, negligent misrepresentation, unjust enrichment and fraud.

An arbitration hearing was held on September 7-8, 2018, in Twin Falls, Idaho. On September 7, 2018, after the close of Sawtooth's proof at the hearing, the Arbitrator granted a directed verdict in favor of Twin Falls on Sawtooth's claims for breach of fiduciary duty, the demand for turnover of corporate records, and the demand for an accounting. Following the hearing, both parties submitted post-hearing briefs on October 17, 2018. On November 9, 2018, the Arbitrator entered an Interim Award, finding in favor of Twin Falls on its counterclaim for breach of contract. The Arbitrator held that Sawtooth was liable to Twin Falls in the amount of $236,830 for breach of contract and awarded judgment in favor of Twin Falls on Sawtooth's remaining claims. Pursuant to the Operating Agreement, the Arbitrator also awarded Twin Falls its attorneys' fees and costs. Dkt. 1, Ex. 4, at § 21.11.

Following submission of Twin Falls' fees and costs and Sawtooth's objection thereto, the Arbitrator confirmed the Interim Award and entered a Final Award and Award of Attorneys' Fees and Costs on January 7, 2019 ("Final Award"). In addition to $236,830 in damages for Sawtooth's breach of contract, the Final Award granted Twin Falls their total requested attorneys' fees and costs in the amount of $976,207.74, as well as $17,008.49 for Twin Falls' share of the AAA expenses. The Interim Award and Final Award are referred to collectively hereinafter as the "Arbitration Award." Pursuant to 9

U.S.C. § 9 and Idaho Code section 7-911, Twin Falls filed the instant action to confirm the Arbitration Award on January 9, 2019.

Although the aforementioned facts are those relevant to the instant suit, a brief summary of the underlying dispute provides necessary context for Sawtooth's attempt to vacate the Arbitration Award. Sawtooth is an ambulatory surgery center founded in 1998 by a small group of surgeons in Twin Falls, Idaho. As Sawtooth grew, the prospect of large-scale funding and national resources motivated a partnership with a company called National Surgical Corporation ("NSC"). NSC acquired a fifty-one percent (51%) ownership interest in Sawtooth, assumed the position of Managing Member of Sawtooth, and held its interest through special purpose entity Twin Falls. The Operating Agreement set out the rights and duties of the Managing Member and the non-Managing Members of Sawtooth.

Between 2007 and 2011, Sawtooth flourished under the management of NSC. However, in late 2011, NSC sold its interest in Twin Falls to AmSurg Holdings ("AmSurg"). Twin Falls, under its new ownership, served as the Managing Member of Sawtooth between September 1, 2011, and December 26, 2017. Twin Falls succeeded to broad managerial powers and control of Sawtooth under the Operating Agreement, which remained unaltered during the AmSurg acquisition. In exchange, Twin Falls received a monthly "Management Fee" equal to seven-percent (7%) of Sawtooth's net receipts.[1]

Sawtooth became dissatisfied with Twin Falls' management almost immediately.

---

[1] This fee was later adjusted down to six percent (6%) under the terms of the Operating Agreement.

Over the next six years, the relationship between the parties continued to deteriorate. Although it recounts a number of Twin Falls' purported failures, Sawtooth was particularly frustrated by Twin Falls' management of Sawtooth's ophthalmology practice group ("Ophthalmology Group"), concerned about Twin Falls' lack of strategic planning and recruitment, and disenfranchised by Twin Falls' purported acts of interference with Sawtooth's physicians and revenue-generating activities by competitor St. Luke's Medical Group, Ltd. ("St. Luke's"). Dkt. 8, ¶ 22.

Beginning in 2012, Sawtooth's Ophthalmology Group began criticizing the compensation paid to Twin Falls as disproportionate to the value Twin Falls contributed to Sawtooth's business. In 2013, the Ophthalmology Group expressed a desire to potentially withdraw from Sawtooth's membership and move their surgical caseload to another surgical center. Twin Falls negotiated with the Ophthalmology Group for more than a year. The Ophthalmology Group's main concerns were its percentage of ownership, the management fee paid to Twin Falls, and the long-term viability of Sawtooth given competition from St. Luke's. Despite lengthy discussions, the Ophthalmology Group ultimately decided to leave Sawtooth, and subsequently sold their membership units to remaining non-Managing members of Sawtooth.

Over the following two years, the Ophthalmology Group reduced its caseload but continued to perform procedures at Sawtooth until it had satisfied its noncompetition obligations. Once such obligations were satisfied, the Ophthalmology Group cut all ties with Sawtooth. Sawtooth suggests Twin Falls made no efforts to recruit surgeons to replace the income it knew would be lost at the end of the noncompetition period and instead chose

to "reap the Ophthalmology Group's revenue during the period they were bound by the non-competition obligation." Dkt. 8, ¶ 29. As a result, Sawtooth suggests Twin Falls "forfeited rights against physicians whose membership obligations would have yielded approximately $15,000,000 in projected gross earnings." *Id*. at 30.

Sawtooth also claims Twin Falls did nothing to prevent or remedy interference with its operations by St. Luke's, including the health system's purported coercion of Sawtooth's non-Managing Members and non-Member physicians. In particular, Sawtooth claims one of Sawtooth's founding Members, Dr. Blake Johnson, moved his entire surgical practice to St. Luke's new surgery center in late 2016. Sawtooth alleges Twin Falls failed to take legally required action to divest Dr. Johnson of his membership interest in Sawtooth, failed to enforce Dr. Johnson's noncompetition obligations, and failed to take action to stop member compensation from being paid to Dr. Johnson.

After "intense discussions" between Sawtooth's non-Managing Members and Twin Falls regarding the future of the surgery center, Twin Falls ultimately withdrew as Managing Member on December 26, 2017. Dkt. 8, ¶ 41. The Operating Agreement required that if "the Non-Managing Members elect timely to reconstitute and continue the Company" following the withdrawal of the Managing Member, "the Company shall purchase the Units of the Managing Member for cash[.]" Dkt. 1, Ex. 4, at § 16.2. After Twin Falls withdrew, Sawtooth continued the company and elected member Dr. Peter Doble ("Dr. Doble") as its Managing Member. Twin Falls' breach of contract counterclaim was for Sawtooth's failure to buy Twin Falls' units following Twin Falls' withdrawal. The parties stipulated at the arbitration hearing that damages related to Sawtooth's failure to

pay Twin Falls for its ownership interest after the withdrawal amounted to $236,830.00. The Arbitrator found in favor of Twin Falls on its breach of contract counterclaim and awarded Twin Falls the aforementioned amount following the arbitration.

## III. LEGAL STANDARD

Under 9 U.S.C. § 10 of the Federal Arbitration Act ("FAA"), a United States district court may vacate an arbitration award "only in very unusual circumstances." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Limited judicial review of arbitration awards "maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008). If parties could take "full-bore legal and evidentiary appeals," arbitration would become "merely a prelude to a more cumbersome and time-consuming judicial review process." *Id.* (internal quotation marks and citations omitted). The party seeking to vacate the arbitration award thus bears the burden for establishing grounds to do so. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

Pursuant to 9 U.S.C. § 10(a), a court may vacate an arbitration award if: (1) the award was procured by corruption, fraud or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of a party were prejudiced; or (4) where the arbitrators exceed their powers, or so imperfectly executed them that "a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

The Court's responsibility upon review of an arbitration award is to ensure that the

FAA's due process protections were afforded. *U.S. Life Ins. Co*, 591 F.3d at 1173. The Court is not to impose federal procedural and evidentiary requirements upon the arbitration hearing. *Id*. at 1172. Nor may the Court "reconsider the merits of [a party's] substantive legal arguments." *Sandru v. TD Ameritrade, Inc*., 2015 WL 5611571, at *3 (D. Idaho 2015) (citing *Biller v. Toyota Motor Corp*., 668 F.3d 655, 664 (9th Cir. 2012)). Confirmation is required even in the face of "erroneous findings of fact or misinterpretations of law." *Am. Postal Workers Union, AFL-CIO v. United States Postal Serv.*, 682 F.2d 1280, 1285 (9th Cir. 1982). As such, the scope of review is "both limited and highly deferential." *PowerAgent, Inc. v. Elec. Data Sys. Co.*, 358 F.3d 1187, 1193 (9th Cir. 2004).

If vacatur is not warranted, section 11 of the FAA allows a court to modify or correct an award: where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted; or where the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11. Like § 10, erroneous findings of fact or misinterpretations of the law are not grounds for modification or correction of an award under § 11. *San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd*., 293 F.2d 796, 800 (9th Cir. 1961).

## IV. ANALYSIS

### A.    Vacatur Pursuant to 9 U.S.C. § 10

Sawtooth seeks to vacate the Arbitration Award because the Arbitrator committed misconduct and because the Arbitration Award "is so fundamentally flawed in its manifest

disregard of the law that it cannot be construed as final, mutual and definite." Dkt. 22-1, at 7-8.

### 1. Misconduct by the Arbitrator

The FAA permits vacatur where "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Sawtooth suggests the Arbitrator committed misconduct by denying its motions to compel, failing to postpone or extend the hearing, excluding testimony from Sawtooth's non-retained experts, and disregarding Sawtooth's evidence.

#### a. *Denial of Sawtooth's Motions to Compel*

Sawtooth first suggests vacatur is appropriate because the Arbitrator improperly restricted Sawtooth's access to essential discovery by denying Sawtooth's Motion to Compel Twin Falls to produce supplemental responses to specific interrogatories and requests for production of documents. Dkt. 22-1, at 7; Dkt. 8, at ¶¶ 84-88. Sawtooth also challenges the Arbitrator's denial of Sawtooth's Motion to Compel further deposition testimony from Justin Page, Twin Falls' Federal Rule of Civil Procedure 30(b)(6) designee. Dkt. 8, at ¶¶ 89-95.

Unless a discovery mandate is found in a statute, contract provision, or the adopted rules, a party to arbitration has no legal right to prehearing discovery. *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980). Here, the Operating Agreement allowed for limited discovery, including a brief discovery period concluding 30 days after filing of the demand

for arbitration, no more than 20 hours of depositions, production of responsive documents, and identification of individuals with knowledge of the dispute. Dkt. 1, Ex. 4, at § 21.9. While the parties engaged in such discovery, Sawtooth faults the Arbitrator for failing to compel supplemental discovery when Twin Falls' discovery responses and 30(b)(6) deponent purportedly fell short. Dkt. 8, ¶¶ 84-95.

A denial of discovery is not a basis for vacatur under the FAA. *Hyatt Franchising, LLC v. Shen Zhen New World I, LLC*, 876 F.3d 900, 902 (7th Cir. 2017); *Bain Cotton Co. v. Chesnutt Cotton Co.*, 531 F. App'x 500, 501 (5th Cir. 2013) ("Regardless [of] whether the district court. . . might disagree with the arbitrator['s] handling of [a party's] discovery requests, that handling does not rise to the level required for vacating under any of the FAA's narrow and exclusive grounds."). Although Sawtooth alleges the Arbitrator's discovery rulings warrant vacatur under 9 U.S.C. § 10(a)(3) because a judge may set aside an arbitrator's award where the arbitrator "refuses to hear evidence pertinent and material to the controversy," the statutory phrase "refusing to hear evidence" concerns the conduct of the hearing, not the conduct of discovery. *Hyatt*, 876 F.3d at 901. Notably, "avoiding the expense of discovery under the Federal Rules of Civil Procedure and their state-law equivalents is among the principal reasons why people agree to arbitrate." *Id*. That Twin Falls' attorneys' fees in the arbitration proceeding approached $1 million shows that "plenty of discovery occurred" and an argument that the Arbitrator "should have allowed more rings hollow." *Id*.

Further, to vacate an arbitration award on the ground of arbitrator misconduct, the misconduct must amount to a denial of fundamental fairness of the arbitration proceeding.

*Roche v. Local 32B-32J Service Employees Intern. Union*, 755 F. Supp. 622, 624 (S.D.N.Y. 1991). "In handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Bell Aerospace Co. Div. of Textron, Inc. v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974). Here the process the Arbitrator employed ensured due process by permitting the discovery outlined in the Operating Agreement, allowing each of the parties an adequate opportunity to present their evidence and arguments with respect to the Motions to Compel, and entering written orders denying both motions. *Immersion Corp. v. Sony Comput. Entm't Am. LLC*, 188 F. Supp. 3d 960, 975 (N.D. Cal. 2016). Arbitrators "enjoy 'wide discretion to require the exchange of evidence, and to admit or exclude evidence, how and when they see fit.'" *U.S. Life Ins. Co.*, 591 F.3d at 1175 (9th Cir. 2010) (quoting *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1444 (11th Cir. 1998)).

The Court concludes the Arbitrator appropriately exercised her discretion and that there was no misconduct in refusing to compel production of supplemental discovery.

### b.    Length of the Arbitration Proceedings

Sawtooth also faults the Arbitrator for ignoring "the practical impossibility of adjudicating a dispute of this magnitude within 75 days" and disregarding "the fundamental unfairness of allocating each party five and one-half hours" at the hearing "despite vastly disproportionate proof required to establish their respective claims." Dkt. 8, ¶ 116. Many of Sawtooth's complaints regarding the arbitration involve the short time-frame both before and during the hearing. *See, e.g.*, Dkt. 22-1, at 2 (stating the Arbitrator "ram-rodded the parties through a seventy-five (75) day proceeding from filing to hearing); *Id*. at 4

("Sawtooth had 75 calendar days from filing to exchange and distill 30,000+ pages of documents. . . and to otherwise litigate a dispute customarily handled during an exponentially longer timeframe."); *Id*. at 9 ("Although the volume of evidence exchanged, analyzed and distilled by the Parties over an (absurdly) short period requires careful attention, the [Arbitrator], in fact, had more time between the end of the Arbitration Hearing and the issuance of her Final Award than the parties had to litigate the entire arbitration itself."). However, both the 75-day deadline and the two days allotted for the hearing were required under the parties' Operating Agreement. Dkt. 1, Ex. 4, at § 21.9.

The Ninth Circuit has "traditionally vacated arbitration awards" under 9 U.S.C. 10(a) "in cases where arbitrators somehow alter the parties' contractual obligations." *W. Employers Ins. Co. v. Jefferies & Co*., 958 F.2d 258, 262 (9th Cir. 1992). The Arbitrator cannot be said to have committed misconduct by following the parties' contractually mandated arbitration schedule. Moreover, as Twin Falls notes, it is undisputed that Sawtooth never requested that the Arbitrator extend the 75-day time frame or the allotted hearing time. Dkt. 24, at 5, n. 3. The Arbitrator's failure to postpone or extend the length of the hearing cannot constitute misconduct warranting vacatur where Sawtooth itself never requested that she do so. *American Steelworkers of Am.., AFL-CIO-CLC v. Smoke-Craft, Inc*., 652 F.2d 1356, 1360 (9th Cir. 1981) ("Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator."); *Johnson v. Directory Assistants Inc*., 797 F.3d 1294, 1301 (11th Cir. 2015) (arbitrator's failure to postpone hearing did not constitute misconduct where party made no request for an

extension of the hearing date).

### c. Exclusion of Expert Testimony

Sawtooth also suggests the Arbitrator improperly granted Twin Falls' Motion to Exclude two of Sawtooth's witnesses, Dr. Doble and Dr. Rod Kack ("Dr. Kack"), in their capacities as non-retained expert witnesses.[2] Dkt. 8, at ¶¶ 107-110. Like the Arbitrator's discovery rulings, vacatur is appropriate for the exclusion of relevant evidence only when the exclusion "so affects the rights of a party that it may be said that [the party] was deprived of a fair hearing." *Hoteles Condado Beach, LA Concha and Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) (citations omitted). The Arbitrator excluded Sawtooth's non-retained expert witnesses because Sawtooth failed to properly disclose a summary of their facts and opinions. Dkt. 10-25, Ex. 30, at 3.

For non-retained experts, Idaho Rule of Civil Procedure 26(b)(4)(A)(ii) requires a party to disclose "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." I.R.C.P. 26(b)(4)(A)(ii). Although Sawtooth disclosed a summary of the general facts the testimony of Dr. Doble and Dr. Kack was to be based upon, Sawtooth failed to disclose a summary of the substance of the doctors' expert opinions. Dkt. 8, Ex. 9, at 5-9.[3] The Idaho

---

[2] The Arbitrator excluded another of Sawtooth's non-retained expert witnesses, Dr. David Christensen, for the same reasons she excluded the testimony of Drs. Doble and Kack. Dkt. 10-25, Ex. 30, at 3. Sawtooth does not object to the exclusion of Dr. Christensen's expert testimony. Dkt. 8, ¶¶ 107-110.

[3] For instance, while Sawtooth's disclosure stated one aspect of Dr. Doble's expert testimony would be "the financial and operational status of [the Sawtooth surgery center] from the time of its inception to the present," the disclosure failed to provide any information to identify Dr. Doble's *expert opinion* with respect to the financial and operational status of the surgery center from inception to the time of the arbitration. *Id.* at 6. The entire disclosure suffers the same ambiguity and does not summarize any of the specific *opinions* of Dr. Doble or Dr. Kack. *Id.* at 5-9.

Supreme Court has held that a trial court committed reversible error by allowing expert testimony not properly disclosed pursuant to Rule 26. *Radmer v. Ford Motor Co*., 813 P.2d 897, 902 (Idaho 1991). The Arbitrator's exclusion of Sawtooth's non-retained experts due to Sawtooth's incomplete Rule 26 disclosure was not only within her discretion, but was required under Idaho law. Clearly, the Court cannot find Sawtooth was denied a fair hearing because the Arbitrator followed Idaho law by excluding the non-retained experts Sawtooth failed to properly disclose.

### d. Consideration of Evidence

Finally, Sawtooth argues the Arbitrator committed misconduct because she "completely ignor[ed]" Sawtooth's "clear tabulation of legal elements to evidence in its pre-hearing and post-hearing briefing." Dkt. 22-1, at 7 (citing Dkt. 8, ¶¶ 111-120). The only specific evidence Sawtooth cites that the Arbitrator purportedly ignored is Sawtooth's counter-designation of testimony from the video-recorded deposition of Dr. Blake Johnson ("Dr. Johnson"). Dkt. 8, ¶ 118. Sawtooth claims:

> This counter-designation contained dispositive evidence that Twin Falls had knowingly. . . breached the Sawtooth Operating Agreement by: (a) allowing Dr. Johnson to remain a Member of Sawtooth through 2017 without bringing a single procedure to Sawtooth, thereby violating the federal STARK laws mandating that an ambulatory surgery center's physician owners commit at least 1/3 of their cases to that center; (b) allowing Dr. Johnson to violate his non-competition obligations under the Sawtooth Operating Agreement; and (c) allowing Dr. Johnson to be paid membership distributions without tendering performance required by the federal STARK laws.

Dkt. 8, ¶ 118.

However, as the Arbitrator stated in her Interim Award, "Sawtooth at the hearing did not provide any evidence about which provisions [of the Operating Agreement] were

allegedly breached" by Twin Falls, and "Sawtooth has failed to demonstrate by a preponderance of the evidence that Twin Falls breached the Operating Agreement." Dkt. 10-32, Ex. 38, at 7. Sawtooth's Counter-Petition similarly fails to identify or analyze the specific provisions of the Operating Agreement Twin Falls purportedly breached with respect to Dr. Johnson, as does the counter-designation of Dr. Johnson's testimony Sawtooth submitted to the Arbitrator following the hearing.[4] Dkt. 8, ¶¶ 33, 118-120, 159-160; Dkt. 10-29, Ex. 35.

Further, even if Sawtooth's pre-hearing and post-hearing briefing addressed the deficiency in Sawtooth's proof of its breach of contract claim during the hearing, such submissions do not constitute evidence. *Harmston v. Agro-W., Inc.*, 727 P.2d 1242, 1246 (Idaho Ct. App. 1986) (explaining that because documents do not become evidence until offered and admitted by the court, there was no error in "excluding" records where "the transcript of the trial does not disclose that the. . . 'records' were ever offered" into evidence); *Donndelinger v. Donndelinger*, 690 P.2d 366, 374 (Idaho Ct. App. 1984) (pretrial submissions "are not evidence unless offered and admitted at trial."). As Twin Falls contends, and the Arbitrator's Interim Award confirms, Sawtooth failed to tie evidence to its allegations regarding Twin Falls' purported breach of specific provisions of the Operating Agreement during the hearing. *See*, *e.g.*, Dkt. 24, at 8; Dkt. 10-32, Ex. 38, at 7. If "Sawtooth believed that it had relevant facts or testimony, it was incumbent upon

---

[4] Moreover, Twin Falls maintains that because the Stark law is wholly inapplicable to Ambulatory Surgery Centers that, like Sawtooth, have a corporate partner, Sawtooth asserted no damages and produced no testimony or communication from any regulator related to any supposed violation of the Stark law during the hearing. Dkt. 24, at 7, n. 6 (citing 42 C.F.R. § 411.351).

Sawtooth to offer those facts or testimony into evidence at the hearing via the proper channels. Nothing in the FAA gives Sawtooth a right to ask this Court to correct for its failure to do so now." Dkt. 24, at 8.

Sawtooth's Counter-Petition does broadly claim the Arbitrator "completely ignor[ed] and disregard[ed] the correct analysis and disposition of the evidence demonstrating breach of Sections 7.1(b)(1), 13, 14.1, 14.2, 14.6, 15.3, 15.5, 15.13 and Article XV of the [Operating Agreement]." Dkt. 8, ¶ 160. But Sawtooth did not explain how Twin Falls breached such provisions of the Operating Agreement during the arbitration hearing. Dkt. 10-32, Ex. 38, at 7. Instead, Sawtooth generally claims the Arbitrator's finding with respect to its breach of contract claim "completely ignore[d] and disregard[ed] the correct analysis of supporting testimony at Hearing." Dkt. 8, ¶ 160. In support of this contention, Sawtooth cites the full transcript of the hearing, as well as its entire pre-hearing and post-hearing briefs, without any citation to specific testimony or evidence to establish Twin Falls breached the aforementioned provisions of the Operating Agreement.[5] *Id*. Sawtooth also neglects to provide the "correct" analysis of any of the provisions of the Operating Agreement the Arbitrator purportedly ignored in its briefing before this Court.

---

[5] As the Ninth Circuit has observed, this type of approach is not appropriate:

> When reading [plaintiff's] brief, one wonders if [plaintiff], in its own version of the "spaghetti approach," has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of [plaintiff's] claim. As the Seventh Circuit observed in its now familiar maxim, "[j]udges are not like pigs, hunting for truffles buried in briefs."

*Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Pursuant to § 10(a)(3), vacatur is appropriate where the arbitrator refuses to consider evidence "pertinent and material to the controversy." Sawtooth does not identify the specific evidence the Arbitrator purportedly failed to consider, and has not shown why such evidence was pertinent or material to its breach of contract claim. Even if the Court were inclined to sift through the 60-pages of Sawtooth's pre-hearing and post-hearing submissions and the 500-page transcript of the arbitration hearing in an attempt to find evidence the Arbitrator supposedly disregarded and ignored, such review is far beyond the scope of the "limited and highly deferential" review of an arbitration award permitted under the FAA. *PowerAgent*, 358 F.3d at 1193; *Biller*, 668 F.3d at 664 (the FAA "provides no authorization for a merits review."); *Bosack v. Soward*, 586 F.3d 1096, 1105 (9th Cir. 2009) (whether or not an arbitrator's findings are supported by the evidence is beyond the scope of a court's review); *Coutee v. Barington Captial Grp., L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003) (a court has no authority to re-weigh evidence considered by the arbitrator).

## 2. Manifest Disregard of the Law

Sawtooth also argues the Arbitration Award is "so fundamentally flawed in its manifest disregard of the law that it cannot be construed as final, mutual and definite." Dkt. 22-1, at 8. The FAA permits vacatur where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made." 9 U.S.C. § 10(a)(4). A party seeking relief under this provision "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2017).

### a. Errors in the Arbitrator's Findings of Fact and Conclusions of Law

In support of its contention that vacatur is warranted under § 10(a)(4), Sawtooth

cites a table included in its Counter-Petition addressing each of the Arbitrator's allegedly flawed findings of fact and conclusions of law. Dkt. 22-1, at 8 (citing Dkt. 8, ¶¶ 159-60). Yet neither "erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the [FAA], which is unambiguous in this regard." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 994 (9th Cir. 2003). Arbitrators "exceed their power" not "when they merely interpret or apply the governing law incorrectly, but when the award "exhibits a manifest disregard of law."[6] *Id.* at 997 (internal citations and quotation marks omitted). "Manifest disregard of the law means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Biller,* 668 F.3d at 665 (citing *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir.2010)). "To vacate an arbitration award on this ground, '[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it.'" *Id.* (quoting *Lagstein*, 607 F.3d at 642.

Here, the Arbitrator recognized the applicable law, stating:

> Sawtooth, as Claimant, has the burden of proving by a preponderance of the evidence its claim for breach of contract. Sawtooth must prove (a) the existence of the contract, (b) the breach of the contract, (c) damages caused by the breach, and (d) the amount of those damages. *Path to Health, LLP v. Long*, 161 Idaho 50, 57, 383 P.3d 1220, 1227 (2016).

Dkt. 10-32, Ex. 38, at 7. Sawtooth suggests the Arbitrator ignored this applicable law because she "disregarded the Operating Agreement and the legal consequences of Twin Falls' breaches that formed the basis of the dispute." Dkt. 22-1, at 9.

---

[6] Although the term "manifest disregard for law" does not appear in the FAA, it has "come to serve as a judicial gloss on the standard for vacatur" under § 10(a)(4). *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 414 (9th Cir. 2011).

In support of this claim, Sawtooth again relies solely on its general allegation that Twin Falls breached the Operating Agreement because it allowed Dr. Johnson to withdraw from participation in Sawtooth's membership and allowed Dr. Johnson to compete with Sawtooth while retaining a membership interest in Sawtooth. *Id*. at 10. But Sawtooth does not provide any incorrect interpretation of particular contract terms the Arbitrator made or specific admitted evidence the Arbitrator ignored that established Twin Falls breached the Operating Agreement with respect to Dr. Johnson. *See generally* Dkts. 20, 21, 22-1, 26; Dkt. 8, ¶¶ 33, 112, 118-120, 159-160.

Sawtooth also vaguely implies the Arbitrator ignored Twin Falls' breach of the Operating Agreement with respect to its management of the Ophthalmology Group. Dkt. 8, ¶¶ 23-30. Sawtooth does not address such claims in any of its briefing on the instant motions. Further, while Sawtooth's Counter-Petition identifies purported mistakes in the Arbitrator's findings of fact with respect to the departure of the Ophthalmology Group, it does not identify any specific provisions of the Operating Agreement Twin Falls purportedly breached or specific evidence the Arbitrator ignored with respect to Twin Falls' alleged mismanagement of the Ophthalmology Group.[7]

Sawtooth's Counter-Petition also claims Twin Falls violated the Operating

---

[7] A review of the hearing transcript illustrates Sawtooth's own witness and current Managing Member, Dr. Doble, testified that Twin Falls could not take legal action against the Ophthalmology Group because the ophthalmologists did not breach their non-compete by leaving Sawtooth. Dkt. 10, Ex. 31, at 129:4-7. Dr. Doble also confirmed that the two-year limitation on the Ophthalmology Group's non-compete was only triggered because he and other non-Managing Members purchased the Ophthalmology Group's shares in Sawtooth, allowing the ophthalmologists to move all of their procedures to another surgery center after the two years expired. *Id*. at 8-25, 130:1-23; *see also* 201:17-25, 202:1-6 (testimony of Sawtooth member Dr. Kack confirming his colleagues' purchase of the Ophthalmology Group's shares "facilitated the ophthalmologists leaving our group").

Agreement because "it did nothing to prevent or remedy" St. Luke's purported interference with Sawtooth and its physicians. Dkt. 8, ¶¶ 31-34. However, the Arbitrator specifically held "Sawtooth provided limited evidence regarding St. Luke's. It is clear that both St. Luke's and Sawtooth considered themselves competitors. But Sawtooth presented no evidence that St. Luke's acted improperly to hinder Sawtooth's business in a manner that would have been actionable by Sawtooth or Twin Falls." Dkt. 10-32, Ex. 38, at 6. Sawtooth again contends this finding "ignores the substance of Dr. Johnson's testimony relating to the St. Luke's issue and its dispositive substance as proof of Twin Falls' breach of the Sawtooth Operating Agreement." Dkt. 8, ¶ 159. While Sawtooth argues the statements in the counter-designation of Dr. Johnson's testimony conclusively establish Twin Falls breached the Operating Agreement, Twin Falls submitted its own designations of Dr. Johnson's testimony to refute Sawtooth's claims.[8] Dkt. 10-31, Ex. 37. at ¶¶ 11, 37-39. That the Arbitrator rejected Sawtooth's interpretation of Dr. Johnson's testimony is not a basis for vacatur, even if his testimony supported Sawtooth's interpretation. Under the limited standard of review permitted by the FAA, the risk that arbitrators "may construe the governing law imperfectly in the course of delivering a decision" or may "make errors with respect to the evidence upon which they base their rulings, is a risk that every party to arbitration assumes, and such legal and factual errors lie far outside the category of conduct embraced by § 10(a)(4)." *Kyocera*, 341 F.3d at 1003.

---

[8] The quoted statements in Sawtooth's counter-designation of Dr. Johnson's deposition testimony do not reference any specific provision of the Operating Agreement. Dkt. 10-29, Ex. 35. Unlike the Court, the Arbitrator had both Sawtooth and Twin Falls' designations of Dr. Johnson's deposition testimony before her and resolved his testimony in favor of Twin Falls. The Court has "no authority to re-weigh [this] evidence." *Coutee*, 336 F.3d at 1134.

In sum, the Court has reviewed each of the submissions by Sawtooth, including the Arbitration hearing transcript. The Court does not find, and Sawtooth has failed to point to, any evidence in the record or the Arbitration Award to suggest that the Arbitrator was aware of the law and intentionally disregarded it. In the absence of such evidence, vacatur is unavailable under § 10(4)(a). *Id.*

   b. *Abrogation of the Parties' Contractual Agreement*

Sawtooth also argues the Arbitrator exceeded her powers under § 10(a)(4) by disregarding the Operating Agreement's provisions in her attorneys' fee award. Dkt. 22-1, at 11-13. Specifically, the Operating Agreement provided the parties "shall apply and abide by. . . the Idaho Rules of Evidence and Procedure" in arbitration. Dkt. 1, Ex. 4, § 21.9(a). Sawtooth suggests the Arbitrator abrogated this provision of the Operating Agreement by ignoring the factors set forth in Idaho Rule of Civil Procedure 54(e)(3) in her attorneys' fee award. Dkt. 22-1, at 11-12.

Where, as here, an arbitrator is tasked with contract interpretation, it is not enough for a party seeking to vacate the award to show that the arbitrator made even a "grave error." *Oxford Health*, 569 U.S. at 572. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id*. at 569 (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (alteration in original). The Court may vacate the Arbitration Award only if the Arbitrator acted "outside the scope" of her contractually delegated authority and issued an award that simply reflected her "own notions of [economic] justice" rather than "draw[ing] its essence from

the contract[.]" *Id.* (quoting *Eastern*, 531 U.S. at 62) (brackets in original). Thus, the "sole question" for the Court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether [she] got its meaning right or wrong." *Id.*

Under the Idaho Rules of Civil Procedure, "the bottom line in an award of attorney's fees is reasonableness." *Johannsen v. Utterbeck*, 196 P.3d 341, 351 (Idaho 2008) (citing *Lettunich v. Lettunich*, 111 P.3d 110, 121 (Idaho 2005)). "What constitutes a reasonable fee is a discretionary determination for the trial court, to be guided by the criteria of Idaho Rule of Civil Procedure 54(e)(3). *Kayser v. McClary*, 875 F. Supp. 2d 1167, 1196 (D. Idaho 2012). The factors of Rule 54(e)(3) include: time and labor; difficulty of the questions presented; skill required; prevailing charges of like work; fixed or contingent fee; time limitations; amount involved and result obtained; undesirability of the case; relationship with the client; awards in similar cases; costs of automated research; and any other factors. I.R.C.P. 54(e)(3). Though a court must consider all of the Idaho Rule of Civil Procedure 54(e)(3) factors, it is not necessary for the court to address each of the factors in writing. *Johanssen*, 196 P.3d at 351.

Here, although the Arbitrator did not specifically reference the Rule 54(e)(3) factors, it is clear that she considered such factors in issuing her fee award. For instance, with respect to the time, labor and skill required, the Arbitrator held:

> This case involving a ten-claim complaint and counterclaim was vigorously litigated by both sides. The Agreement upon which the action was based required that the parties adhere to very strict and short timelines. Within those time frames, the AAA record reflects that the parties participated in discovery, which included the disclosure of documents and depositions, filing and responding to motions for sanctions, motions for summary judgment and participating in a three-day hearing. The trial required expert

testimony from both sides, as well as lay testimony.

Dkt. 10-36, Ex. 42. The Arbitrator also considered the difficulty of the questions presented and the prevailing charges for like work, by holding the rates charged were "not inconsistent with rates charged in Nashville where counsel for [Twin Falls] is located," and that though the rates were on the high end for those that might be charged by lawyers in Idaho, such rates were not unreasonable "for the work performed and the complexity of the matter." *Id*. at 2.

The Arbitrator specifically noted the time limitations imposed by the circumstances of the case supported her fee award, as the Operating Agreement required that the parties "adhere to very strict and short timelines." *Id*. The Arbitrator also referenced the result obtained by Twin Falls by noting Twin Falls "defeated all ten of [Sawtooth's] claims and prevailed on its counter-claim." *Id*. Finally, the Arbitrator considered the nature and length of the professional relationship between Twin Falls and its counsel, stating the "law firm engaged by [Twin Falls] is a firm with a long relationship with [Twin Falls]." *Id*.

In addition to addressing (without naming) most of the Rule 54(e)(3) factors in her fee award, the Arbitrator rejected Sawtooth's objection to the Statement of Fees and Costs, which was based on the factors set forth in Rule 54(e)(3). *Id*.; *see also* Dkt. 10-34, Ex. 40. Notably, in its objection, Sawtooth made "no comment" on whether the fee award was fixed or contingent, the undesirability of the case, or the reasonable cost of automated legal research. Dkt. 10-34, Ex. 40. Sawtooth did not address awards in similar cases except to reiterate its argument with respect to the prevailing charges for like work. *Id*. at 6-7. Thus, in her fee award, the Arbitrator referenced *every* Rule 54(e)(3) factor Sawtooth discussed

in its objections to the Statement of Fees and Costs. Far from completely disregarding the factors set forth in Rule 54(e)(3), the fee award illustrates the Arbitrator considered each of the factors Sawtooth itself deemed relevant.

Sawtooth chose arbitration and agreed that the Arbitrator should determine what the Operating Agreement required. The Arbitrator did what the parties requested: she followed the Idaho Rules of Civil Procedure and applied the multi-factor analysis required under Rule 54(e)(3). Although her interpretation of such factors went against Sawtooth, and may not have been as thorough or as detailed as Sawtooth desired, Sawtooth cannot "rerun the matter in a court." *Oxford Health*, 569 U.S. at 573. Under § 10(a)(4), "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether [she] construed it at all." *Id*. Because the Arbitrator did so, and therefore did not "exceed her powers," the Court cannot give Sawtooth the relief it requests. *Id*.; *see also BEM I, LLC v. Anthropologie, Inc*., 301 F.3d 548, 554 (7th Cir. 2002) (as long as an arbitrator "consci00000entiously attempts" to apply a contractual choice of law provision, there is no judicial remedy if the arbitrator fails "to apply it correctly" because "there is no judicial review of arbitration awards for legal error").

## B.  Modification pursuant to 9 U.S.C. § 11

In the alternative to vacatur, Sawtooth suggests remand for clarification and modification "is essential to obtain an award that is both factually accurate and addresses dispositive evidence in the arbitration award." Dkt. 22-1, at 13. Sawtooth insists "clarification and modification of the Award is mandatory at a minimum" because the Arbitration Award is "incomplete, ambiguous *and* contradictory." *Id*. at 13-14 (emphasis

in original). Before addressing Sawtooth's specific arguments with respect to modification, the Court notes the language of the statute authorizing modification and correction of awards is not mandatory, and instead provides the district court *may make* an order modifying or correcting an award in certain limited circumstances. 9 U.S.C. § 11 (emphasis added). Whether to modify or remand for clarification is a matter of the Court's discretion. *Sociedad Armadora Aristomenis Panama, S.A. v. Tri-Coast S.S. Co.*, 184 F. Supp. 738, 741 (S.D.N.Y. 1960).

Under § 11, the Court may remand for modification or correction where: (a) there was evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award; (b) the arbitrators have awarded upon a material matter not submitted to them; or (c) the award is imperfect in matter of form not affecting the merits of the controversy. 9 U.S.C. § 11. In addition, a Court may modify and correct an award "so as to effect the intent thereof and promote justice between the parties." *Id.*; *see also Sociedad*, 184 F. Supp. at 741. Sawtooth does not identify which of these provisions supports its remand request, and instead broadly argues remand for modification or clarification is necessary because the award does not adequately address the evidence in the record. Dkt. 22-1, at 13-17.

### 1. Reconciliation of Statements of Fact with the Evidence in the Record

Sawtooth first contends the Arbitration Award must be remanded for clarification and modification because it "is incoherent and irrational, standing alone and even more so [in] comparison to the evidence in the Hearing record[.]" *Id.* at 14. Sawtooth maintains the Arbitrator's findings of facts are "incoherent and irrational" because they are incorrectly

recited, arranged out of chronological order, artificially isolated from other integral facts, and fail to address the evidence relevant to disposition. *Id*. Whether the Arbitrator's findings of fact are incorrectly recited, arranged out of chronological order, or artificially isolated from other facts is not a basis for modification. Like § 10 of the FAA, § 11 does not authorize modifying or correcting an award due to erroneous findings of fact. *San Martine*, 293 F.2d at 800; *James Richardson & Sons v. W.E. Hedger Transp. Corp.*, 98 F.2d 55, 57 (2d Cir. 1938) (the court "is without power to amend or overrule merely because of disagreement with matters of law or facts determined by the arbitrators.")

Nor is the Arbitrator's purported failure to address substantive evidence grounds for modification in this case. Dkt. 22-1, at 13-15. Sawtooth does not identify the specific relevant dispositive evidence the Arbitrator failed to address. The Court cannot consider Sawtooth's claim that the "inconsistencies between the so-called 'Findings of Fact' and the actual record of the Arbitration are astonishing" in the absence of such specificity. *Id.*, at 15. Further, even if the Arbitrator failed to address relevant dispositive evidence, a claim Sawtooth has not established, an arbitrator is not required to "delve into every argument made by the parties," or to "provide a detailed rationale for each and every line of damages awarded." *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-College of Medicine*, 826 F.3d 634, 640 (2d Cir. 2016); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."). As such, an order modifying or remanding the

Arbitration Award is not appropriate.[9]

**2. Disparity between the Record and the Arbitration Award**

Sawtooth also argues remand is required because the Arbitration Award insufficiently explains the Arbitrator's decision "and leaves open myriad issues that a binding arbitration was intended to resolve." Dkt. 22-1, at 15-17. Generally, arbitrators "are not required to set forth their reasoning supporting an award." *Bosack*, 586 F.3d at 1104 (citing *Wilko v. Swan*, 346 U.S. 427, 436 (1953)). Although an arbitrator is not required to issue a written opinion at all, here the parties agreed the "arbitrator shall issue to each Member the arbitrator's decision in writing[.]" Dkt. 1, Ex. 4, at § 21.9(e). The Operating Agreement does not provide any further detail as to what the "decision in writing" should include.

The Ninth Circuit has held an arbitrator's failure to provide a written decision sufficient to facilitate judicial review does not alone support vacatur under the FAA, even where a written decision was required by the parties' agreement. *Biller*, 668 F.3d at 666. In so holding, the Court noted the FAA does not authorize a judicial merits review of arbitration awards. *Id*. As such, a writing submitted by an arbitrator need only be sufficient to determine whether vacatur is warranted under the limited scope of review authorized in the FAA. *Id*. In another case, the Ninth Circuit held an arbitration award that "included two

---

[9] Sawtooth suggests this Court may order clarification "if it concludes the award is unclear and the petitioning party has been unable to obtain the consent of the other party for a request for clarification." Dkt. 22-1, at 15 (citing *Tripi v. Prudential Secs., Inc.*, 303 F. Supp. 2d 349, 356 (S.D.N.Y. 2003)). Twin Falls notes that Sawtooth has never sought (or alleged) that it sought Twin Falls' consent for clarification. Dkt. 24, at 9, n, 9. Sawtooth does not contend it has ever sought Twin Falls' consent for clarification in any of its briefing.

bases for the arbitrator's determination that [defendant] was the prevailing party," provided "enough of the arbitrator's reasoning to facilitate the limited review available under the FAA." *Olson v. Harland Clarke Corp.*, 676 Fed. Appx. 635, 637 (9th Cir. 2017); *see also Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) ("a reasoned award is something short of findings and conclusions but more than a simple result.") (internal quotation marks and citation omitted). Here, the Arbitrator issued an eight-page written decision with thirty-three findings of fact and nine conclusions of law. Dkt. 10-32, Ex. 38.

As previously explained, the Arbitrator recognized the applicable law, and specifically held Sawtooth failed to demonstrate its claim for breach of contract by a preponderance of the evidence. In support of this conclusion, the Arbitrator explained "Sawtooth at hearing did not provide any evidence about which provisions [of the Operating Agreement] were allegedly breached." *Id.*, at 7. The Arbitrator also explained there was no evidence "presented at the hearing that the Ophthalmology Group was in violation of the non-competition clause," and that "Sawtooth presented no evidence that St. Luke's acted improperly to hinder Sawtooth's business in a manner that would have been actionable by Sawtooth or Twin Falls." *Id.* at 6. Although admittedly brief, the Arbitrator's opinion "clearly provide[d] more than a simple result," and gave "justification for the decision[.]" *Cat Charter*, 646 F.3d at 845. As such, the Court finds the Arbitrator's writing was a reasoned one and clarification is not required. *Id*.

In addition, although Sawtooth cites a number of cases in support of its contention that the purported disparity between the record and the Arbitration Award warrant remand,

none of the cases support a remand for modification or clarification in this case Dkt. 22-1, at 15-17. For instance, *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060 (1st Cir. 1995) and *Armstrong v. Commodity Futures Trading Comm'n*, 12 F.3d 401 (3d Cir. 1993) did not involve review of an arbitration decision and are inapplicable. In *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183 (4th Cir. 2010), the Fourth Circuit affirmed the district court's order remanding an arbitration panel's award for clarification where the panel's award was incoherent and the panel exceeded its powers under 9 U.S.C. § 10(a)(4) by deciding a claim they lacked authority to adjudicate. *Id.* at 187. By contrast, here, the Arbitrator adequately explained her reasoning and there is no basis for the Court to find the Arbitrator exceeded her powers.

In *Green v. Ameritech Corp.*, the Sixth Circuit *reversed* the district court's remand for clarification, holding that although an arbitrator's opinion was minimal, it nevertheless satisfied the terms of the parties' agreement. 200 F.3d 967 (6th Cir. 2000). The parties' agreement in *Green* required that the arbitrator's award "be accompanied by an opinion which explains the arbitrator's decision with respect to each theory advanced by each Plaintiff[.]" *Id.* at 970. The district court vacated the arbitration award and remanded to a new arbitrator because the arbitrator's opinion did not "explain" his decision with respect to each one of plaintiffs' theories, but rather "merely announced his decision with respect to each," and was "totally conclusory and insufficient according to the terms of the Arbitration Agreement." *Id.* at 972.

The Sixth Circuit reversed, noting:

If parties to an arbitration agreement wish a more detailed arbitral opinion,

they should clearly state in the agreement the degree of specificity required. In addition, the use of familiar legal terms would serve to ensure that reviewing courts have a standard to guide their analysis. In the instant case [the arbitrator's] opinion was certainly minimal. The arbitration agreement, however, contained only the inexact requirement of an explanation as to each theory, and we find it significant that the arbitrator's opinion provided a separate discussion regarding each of plaintiff's theories and explained, albeit briefly, the reasons for denying recovery on each one.

*Id*. at 975.

Here the Operating Agreement required *less* specificity than the contract in *Green*, mandating only that the Arbitrator provide her decision in "writing," without any detail as to what the writing should include. Dkt. 1, Ex. 4, at § 21.9(e). The Arbitrator's decision is also *more* thorough than that provided in *Green*, as it does not merely offer conclusory statements but instead details the Arbitrator's findings of fact and conclusions of law. Under such circumstances, a remand to the Arbitrator for clarification is not warranted. *Id*. at 978.

Sawtooth also cites several cases to suggest the "lack of findings of fact and conclusions of law plainly evident by the Award, at the very least, mandate a remand for correction and clarification." Dkt. 22-1, at 17. This argument is inexplicable where the Operating Agreement did not require findings of fact and conclusions of law and the Arbitrator nonetheless provided thirty-three findings of fact and nine conclusions of law in her written opinion. Moreover, many of the cases Sawtooth cites undermine its position. *See, e.g., Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 893-94 (2d Cir. 1985) (rejecting contention that an award should be remanded where the arbitrators "provided no clue" as to how they reached their award setting the value on shares of stock owned by a retiring

shareholder because where "a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."); *New Elliott Corp. v. MAN Gutehoffnungshutte AG*, 969 F. Supp. 13, 15 (S.D.N.Y. 1997) (noting a remand due to arbitrators' "bare-bones decision" would have been inappropriate had the arbitration agreement at issue not specifically required findings of fact and conclusions of law); *Sociedad*, 184 F. Supp. at 744 (denying motion to modify or correct arbitration award).

The Court certainly understands Sawtooth's desire for a more thorough opinion. However, Sawtooth has not demonstrated that a remand for clarification or modification is warranted under any of the limited provisions of 9 U.S.C. § 11. As the Court concluded in *Sociedad*:

> Arbitration may or may not be a desirable substitute for trials in court; as to that the parties must decide in each instance. But when they have adopted it, they must be content with its informalities; they may not hedge it about with those procedural limitations which it is precisely its purpose to avoid. They must content themselves with looser approximations to the enforcement of their rights than those that the law accords them, when they resort to its machinery.

*Id*. at 744 (quotation omitted).

## V.   ORDER

**IT IS ORDERED**:

1. Twin Falls' Motion to Confirm Arbitration Award (Dkt. 12) is **GRANTED** and the Final Arbitration Award dated January 7, 2019 is **CONFIRMED** in its entirety;

2. Twin Falls' Motion to Dismiss Counterclaim (Dkt. 13) is **MOOT**[10];

3. Sawtooth's Motion to Vacate and/or Modify Arbitration Award (Dkt. 22) is **DENIED**;

4. The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58(a).

DATED: September 23, 2019

David C. Nye
Chief U.S. District Court Judge

---

[10] *See, e.g., General Elec. Co. v. Anson Stamping Co., Inc.*, 426 F. Supp. 2d 579, 591 (W.D. Ken. 2006) (prevailing party's motion to dismiss opponent's attempt to vacate arbitration award was practical equivalent of a motion to confirm the arbitration award); *Sanluis Developments, L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 333 (S.D.N.Y. 2008) (prevailing party's motion to dismiss losing party's petition to vacate arbitration award would be treated as a motion to confirm the arbitration award).