## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | | |
|---|---|---|
| **TWIN FALLS NSC, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:19-CV-00009-DCN** |
| | ) | |
| **SOUTHERN IDAHO AMBULATORY** | ) | |
| **SURGERY CENTER, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Twin Falls NSC, LLC ("Twin Falls") respectfully opposes Defendant's Motion for a Protective Order (Dkt. 49).

Southern Idaho Ambulatory Surgery Center ("SIASC") asks the Court to enter a protective order limiting post-judgment discovery to documents "(a) produced by SIASC in response to a specific request from [Twin Falls]; (b) obtained through demonstrably lawful means; [or] (c) publicly available." Dkt. 49 at 1. SIASC advances no grounds for any of its requested relief.

Rule 26(c) of the Federal Rules of Civil Procedure requires a movant to show "good cause" for issuance of a protective order. Fed. R. Civ. P. 26(c). SIASC has failed to meet this burden. In fact, the Motion suffers from the same lack of substance or merit as all SIASC's previous statements to this Court. Indeed, the Motion is entirely devoid of specificity. The Motion seeks to keep Twin Falls from using certain information SIASC alleges Twin Falls obtained through the PECOS system, but it does not say what that information is. It does not identify when any purported "data breach" took place, or how unauthorized individuals could have gained access to

the PECOS data when **_SIASC itself_** would have had to grant access to any person seeking to view its PECOS profile. The Motion does not allege that information visible in the PECOS account was not publicly available.[1] It does not state what harm SIASC has suffered or could suffer absent a protective order. Without this basic information, SIASC has not established "good cause" for a protective order.

Twin Falls takes SIASC's accusation about the PECOS system seriously has investigated SIASC's claim. To that end, Twin Falls requested additional and more specific information from SIASC, which it has yet to provide. Regardless, Twin Falls' review of the accusation has not uncovered anything to suggest that it or any of its agents has obtained any information to which it does not have rightful access.

At bottom, it seems clear that SIASC's PECOS system claim is little more than a red herring that SIASC has manufactured in order to distract from its own failure to cooperate in lawful discovery in this Court. After all, supposedly unauthorized access to the PECOS system has nothing to do with the pending post-judgment discovery, and SIASC has not contended otherwise. Even if that were not the case, the proper outcome would remain the same, since it is well-settled that disputes about one party's discovery do not operate to relieve or suspend the discovery obligations of the other parties to that same litigation. *See* Fed. R. Civ. P. 26(d)(3) ("Unless the parties or the court orders otherwise for the parties' or the witnesses' convenience and in the interests of justice, methods of discovery may be used in any sequence, and the discovery by one party does not require any other party to delay its discovery.").[2]

---

[1] SIASC's administrator, Ms. Wensink, is notably noncommittal in saying she "never saw any users for SIASC listed on the Staff page." Dkt. 49-3 at ¶ 4. She stops well short of saying there were no other authorized users, or that any information was obtained improperly. *See id*. at ¶¶ 4-5.

[2] SIASC blatantly violated this rule by causing is corporate representative not to appear for a properly noticed deposition on July 9, 2020 on the basis that it had not received timely assurances from Twin Falls that its agents had

SIASC's true objective here is clear from its proposed order, which asks the Court to forbid all third-party discovery.  *See* Dkt. 49-5 (seeking an order limiting Twin Falls' use in post-judgment discovery to "information and/or materials [that] are (i) produced by SIASC in response to a specific request from Petitioner/Counter-Respondent … or (ii) [that are] publicly available"). That should be rejected out of hand, as even SIASC acknowledges the "the broad reaching scope of permissible discovery in post-judgment proceedings."  Dkt. 49 at 2.  Moreover, SIASC's repeated failures and refusals to provide discovery makes third-party discovery necessary and all the more critical here.

At its core, SIASC asks for a protective order that, essentially, would require Twin Falls to comply with the rules governing discovery.  But SIASC has put forth nothing to suggest that Twin Falls has failed to follow those rules to this point.  Instead, SIASC is abusing the Court's process to delay Twin Falls' properly propounded discovery requests and otherwise thwart Twin Falls' efforts to collect on a judgment that is due and owing.

Twin Falls respectfully requests that the Court deny SIASC's Motion for a Protective Order and award Twin Falls its attorneys' fees and costs for responding to the Motion for Protective Order.

**DATED** this 30th day of July, 2020.

---

not been involved in the alleged incursion into SIASC's PECOS account.  *See* Dkt. 49-1 at 2 (claiming that assurances from Twin Falls that "were not forthcoming by the deadline identified [i.e., unilaterally imposed] by SIASC's counsel."). This was improper.  It also is untrue.  SIASC first contacted Twin Falls about this purported issue at 2:20pm CDT, insisting on a 6pm CDT response deadline.  *See* Dkt. 49-4 at 12.  Counsel for SIASC received Twin Falls' thorough response at 6:02pm CDT, a mere ***two minutes*** after SIASC's arbitrary deadline.  *See id.* at 11.  Yet counsel for SIASC purports to have "discovered that Twin Falls" had responded sometime "[o]n Thursday, 9 July 2020."  *Id*. at 3.  It is, frankly, unbelievable that counsel for SIASC closed his computer promptly at 6pm CDT (4pm in his time zone), and did not check his email again until sometime the next day, even as counsel for Twin Falls was emailing and calling him regarding SIASC's failure to appear at its deposition.

Respectfully submitted,

/s/ Russell S. Baldwin
W. Brantley Phillips, Jr. (*admitted pro hac vice*)
Russell S. Baldwin (*admitted pro hac vice*)
Allison W. Acker (*admitted pro hac vice*)
**BASS BERRY & SIMS PLC**
150 Third Avenue South, Ste. 2800
Nashville, TN 37201
(615) 742-6200
(615) 742-2842 (fax)
bphillips@bassberry.com
rbaldwin@bassberry.com
allison.acker@bassberry.com

Scott D. Hess, ISB #2897
A. Dean Bennett, ISB #7735
**HOLLAND & HART** LLP
800 W. Main Street, Suite 1750
P.O. Box 2527
Boise, ID 83701-2527
(208) 342-5000
(208) 343-8869 (fax)
sdhess@hollandhart.com
adbennett@hollandhart.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via electronic mail to counsel for Southern Idaho Ambulatory Surgery Center on this 30th day of July, 2020, as follows:

Angelo L. Rosa
2211 East Camelback Road, No. 302
Phoenix, Arizona 85016
*arosa@rosacommerce.com*

/s/ Russell S. Baldwin

4