IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TWIN FALLS NSC, LLC, a Tennessee limited liability company,<br><br>　　　Plaintiff/Counter-defendant,<br><br>vs.<br><br>SOUTHERN IDAHO AMBULATORY SURGERY CENTER, LLC, an Idaho limited liability company,<br><br>　　　Defendant/Counterclaimant. | Case No: 1:19-cv-00009-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court are Plaintiff Twin Falls NSC, LLC's ("Twin Falls") Motion to Compel Responses to Discovery in Aid of Execution (Dkt. 39), Twin Falls' Motion to Compel Deposition of Southern Idaho Ambulatory Surgery Center, LLC (Dkt. 40), and Defendant Southern Idaho Ambulatory Surgery Center, LLC's ("SIASC") Motion for Protective Order (Dkt. 49).

Having reviewed the record and briefs, the Court finds that the facts and arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process will not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court finds good cause to GRANT Twin Falls' Motion to Compel Responses to Discovery in Aid of Execution, GRANT Twin

Falls' Motion to Compel Deposition of Southern Idaho Ambulatory Surgery Center, LLC, and DENY SIASC's Motion for Protective Order.

## II. BACKGROUND

The instant motions require the Court to outline Twin Falls' long and tortured attempt to obtain post-judgment discovery from SIASC. On October 2, 2019, Twin Falls obtained a judgment from this Court in its favor confirming an underlying arbitration award in the amount of $1,230,046.23. Dkt. 32. SIASC appealed the Court's judgment to the Court of Appeals for the Ninth Circuit, but did not file a supersedeas bond with the Court of Appeals, did not seek a stay pending appeal, and did not pay the judgment. Dkt. 39, at 2.

To move forward with execution proceedings, Twin Falls served SIASC with both a Notice of Deposition of SIASC's corporate designee ("Notice of Deposition") and Twin Falls' First Set of Interrogatories and Requests for Production of Documents in Aid of Execution ("First Requests") on March 24, 2020. Dkt. 39-1, Ex. A; Dkt. 40-1, Ex. A. The Notice of Deposition stated that Twin Falls would take SIASC's deposition pursuant to Federal Rules of Civil Procedure 30(b)(6) and 69 on April 27, 2020. Dkt. 40-1, Ex. A.

On April 16, 2020, three weeks after service of the First Requests and Notice of Deposition, counsel for SIASC requested, and Twin Falls agreed, to postpone SIASC's deadline for responding to the First Requests to May 11, 2020, and the deposition of SIASC's corporate representative to May 18, 2020. Dkt. 40-1, Ex. C. SIASC selected both dates. *Id*. Counsel for SIASC made clear that its corporate representative was available for deposition on May 18, 2020, and also acknowledged both the feasibility and desirability of

MEMORANDUM DECISION AND ORDER - 2

remote deposition procedures given the COVID-19 pandemic. *Id.* (noting the deposition should be conducted "using whatever remote connection methods are appropriate to ensure health precautions[.]"); *see also* Dkt. 39-1, Ex. C (recommending a specific video conferencing company to utilize for the deposition). Based on SIASC's representations, Twin Falls promptly sent a revised Notice of Deposition resetting the deposition of SIASC's corporate representative for May 18, 2020. Dkt. 40-1, Ex. D.

SIASC did not provide any responses to the First Requests on May 11, 2020, as agreed. Dkt. 39, at 2. On May 12, 2020, Twin Falls' counsel sent SIASC's counsel an email stating:

> Please advise on the status of your client's discovery responses, which were due yesterday. As you will recall, the responses were actually due much earlier than that. But, as a courtesy to you, we extended that deadline by three weeks—to May 11—at your request. In doing so, we understood that you would have no trouble complying with this self-selected deadline. And, we have not heard anything from you to the contrary in the interim. Please provide the responses by not later than 5:00 PM PT today. We need the responses in advance of your client's deposition, which is set to occur in six days.

Dkt. 39-1, Ex. C.

SIASC did not respond to Twin Falls' email, and also failed to appear at a May 12, 2020, teleconference with the Ninth Circuit mediator assigned to its appeal. Dkt. 39-1, ¶ 5. On May 13, 2020, Twin Falls' counsel sent a letter requesting SIASC's discovery responses by the end of the day. Dkt. 39-1, Ex. D. When SIASC's counsel did not respond, Twin Falls' counsel called SIASC's counsel on May 14, 2020, to attempt to meet and confer regarding SIASC's continued failure to respond to discovery. Dkt. 39, at 3. However, SIASC's counsel's voicemail was full, leaving Twin Falls' counsel unable to

leave a message. *Id*. at 4. Twin Falls filed its Motion to Compel Discovery Responses in Aid of Execution ("Motion to Compel Responses") the next day. Dkt. 39.

On May 14, 2020, counsel for Twin Falls emailed SIASC's counsel to request the identity of SIASC's corporate representative so the court reporter could provide the appropriate videoconferencing link. Dkt. 40-1, Ex. E. SIASC's counsel replied that he was "dealing with some pressing personal/family issues," as well as working "through some issues with [SIASC]," but would respond by the morning of May 15, 2020, at the latest. *Id*. SIASC's counsel did not respond by May 15, and instead notified Twin Falls the evening of Sunday, May 17, 2020—a mere twelve hours before the deposition of SIASC's corporate representative was scheduled to occur—that "the witnesses suited to give testimony on the topics in question cannot be made available at present." Dkt. 40-1, Ex. F.

SIASC's counsel justified the last-minute cancellation by stating, "my client and I have concluded that the health concerns relating to COVID-19, the technical issues associated with coordinating the availability of witnesses and the availability of witnesses themselves prevents SIASC from producing witnesses in the deposition rescheduled to tomorrow." *Id*. Although SIASC itself chose May 11 for its discovery response deadline and May 18 for the deposition of its corporate designee, SIASC's counsel also suggested that SIASC would continue to delay responding to discovery or rescheduling the 30(b)(6) deposition for the foreseeable future, stating: "There is no pressing need for demanding interrogatory responses or convening the deposition at this point in time" and "[m]y client will tender written responses as it is able to. I will be in touch with your office to discuss

scheduling depositions as soon as my client can determine it is feasible."[1] *Id*. Twin Falls then filed its Motion to Compel Deposition of Southern Idaho Ambulatory Surgery Center, LLC ("Motion to Compel Deposition"). Dkt. 40.

Although SIASC's response to the Motion to Compel Responses was due by June 5, 2020, SIASC did not file a response by this date, and instead filed a Declaration in Opposition by Angelo Rosa ("First Rosa Declaration"), SIASC's counsel, on June 6, 2020. Dkt. 41. The First Rosa Declaration states that SIASC served Objections and Responses to Twin Falls' First Requests on June 5, 2020. *Id*. at ¶ 5. SIASC's Objections and Responses to the First Requests were attached as an exhibit to the First Rosa Declaration. *Id*. at Ex. B. The First Rosa Declaration also notes that SIASC responded to Twin Falls' requests for production with income tax returns for 2018 and 2019 and an asset list, but, due to the need for redaction, SIASC would provide a "redacted assemblage of those documents for the Court's review." *Id*. at ¶ 6. The First Rosa Declaration concluded by stating SIASC's production rendered Twin Falls' Motion to Compel Responses moot. *Id*. at ¶¶ 7–9.

A review of SIASC's interrogatory responses to the First Requests reveals they are woefully inadequate. For example, in response to Twin Falls' request for the "total value of all cash held by SIASC" and identification "with specificity [of] each account where such cash is held," SIASC responded: "$0 SIASC does not have any information or documents responsive to this request in its possession and/or control." Dkt. 41, Ex. B at 6.

---

[1] Whatever SIASC's purported reasons were for delay (valid or not), it is completely unreasonable to assert, in essence, that deadlines do not matter and that SIASC would respond to Twin Falls' discovery requests at some future nebulous time when it was ready. This type of behavior does not reflect notions of fair play and courtesy in litigation and will not be tolerated by the Court.

In response to Twin Falls' request that SIASC describe and state the value of any non-cash liquid asset owned by SIASC, SIASC responded "$0 SIASC does not have any information or documents responsive to this request in its possession and/or control." *Id*. In response to Twin Falls' request for "the total value of all unpaid accounts receivable owed to SIASC," SIASC responded that it did not have any unpaid accounts or "have any accounts receivable documents in its possession and/or control." *Id*.[2] The *only* information SIASC conveyed in response to Twin Falls' fourteen interrogatories was that: (1) SIASC's illiquid assets are equipment already identified in an asset schedule produced by Twin Falls (not SIASC) during the underlying arbitration in 2018[3]; (2) Debbie Wensink, SIASC's Administrator and treasurer, and Dr. Peter Doble, II, SIASC's Medical Director and SIASC's (apparently) sole manager and officer, have knowledge regarding SIASC's financial condition since January 1, 2018; and (3) SIASC's membership interest is owned 100% by "The Surgery Center, PLLC." *Id*.

SIASC's discovery responses were even less forthcoming. In response to Twin Falls' First Requests for nineteen categories of documents, SIASC responded "none" and/or provided boilerplate objections to fourteen requests; identified the Idaho Secretary of State's public website in response to Twin Falls' request for all filings SIASC has made with the Secretary of State since January 1, 2018; and produced portions of its 2018 and

---

[2] SIASC also included boilerplate objections with each of its responses but did not identify any specific information to support any of the objections.

[3] SIASC qualified even this limited response by claiming the asset schedule "was out-of-date and contained numerous inaccuracies at the time it was received from Twin Falls NSC. However, the equipment that was accurately inventoried remains in place at the [SIASC] Surgery Center facility." *Id*. SIASC did not offer any specifications regarding which equipment it deemed "accurately inventoried" in 2018.

2019 federal tax returns to respond to Twin Falls' remaining four requests for tax returns, Schedule K-1 documents, all documents reflecting or relating to any distributions, payments, loans, or other disbursements from SIASC to its members, and an inventory of all assets owned by SIASC, since January 1, 2018. *Id*. As stated in the First Rosa Declaration, it appears that SIASC did not actually produce its complete 2018 and 2019 tax returns, but instead withheld portions of such documents pending review by the Court. Dkt. 41, ¶ 6. However, SIASC did not request that the Court review the redacted portions of its tax returns, did not provide any argument regarding why it would be appropriate for the Court to conduct such a review, and did not actually submit such documents to the Court for a review.

On June 11, 2020, SIASC filed a series of declarations in response to the Motion to Compel Deposition. The first two declarations are from Dr. Doble.[4] Dkt. 42; Dkt. 43. Dr. Doble's declarations suggest he could not attend the May 18 deposition due to the COVID-19 pandemic and his responsibilities to patients as an ENT. *See generally*, Dkt. 42. SIASC also filed the declaration of Ms. Wensink, which explained that fully responding to the First Requests was impossible due to COVID-19 and her extensive duties as Administrator for SIASC during the pandemic. *See generally*, Dkt. 44. Ms. Wensink also noted she was unavailable for "and, frankly, unwilling to take the risk of, even a remote deposition, which necessarily requires at least a videographer and a court reporter in the deposition room." *Id*. at ¶ 9. Finally, Mr. Rosa also filed a second declaration to supplement his first

---

[4] Although SIASC has not so notified the Court, it appears the second declaration of Dr. Doble (Dkt. 43) was filed in error, as it is identical to Dr. Doble's first declaration.

MEMORANDUM DECISION AND ORDER - 7

declaration in response to the Motion to Compel Responses, as well as to respond to Twin Falls' Motion to Compel Deposition ("Second Rosa Declaration"). Dkt. 45.

The Second Rosa Declaration states that Mr. Rosa attempted to explain to Twin Falls' counsel "that the procedurally correct sequence of communication relating to discovery disputes of this kind is for Twin Falls to withdraw its motions to compel and then engage in meet and confer appropriate in scope for the purposes of avoiding the need for a motion to compel *further* responses." Dkt. 45, ¶ 5 (emphasis in original). However, Mr. Rosa confirmed that he advised Twin Falls' counsel that he would not "meet and confer" until Twin Falls first withdrew its Motions to Compel. *Id*. Mr. Rosa also highlighted the difficulty of complying with Twin Falls' discovery requests due to COVID-19 and noted Twin Falls had served additional written discovery requests and re-noticed its deposition for SIASC's corporate designee. *Id*. at ¶¶ 8–9.

Mr. Rosa included his correspondence with Twin Falls' counsel between June 8 and June 11, 2020, with the Second Rosa Declaration. This correspondence illustrates that Twin Falls' counsel notified Mr. Rosa on June 8, 2020, that he had "serious concerns" with SIASC's discovery responses and requested a specific time to meet and confer. Dkt. 45, Ex. A. On June 9, 2020, Twin Falls' counsel sent Mr. Rosa a formal letter detailing each of the deficiencies in SIASC's discovery responses. *Id*. In the letter, Twin Falls again requested that Mr. Rosa meet and confer. Twin Falls' counsel offered to make himself or his co-counsel "available to talk as soon as you are able, whether or not during business

hours." *Id*. at 12.[5] On the same day, Twin Falls also served SIASC's counsel with a Second Amended Notice of Deposition for SIASC's corporate designee to occur on July 8, 2020, a Notice of Deposition of Ms. Wensink, to occur on June 25, 2020, and Twin Falls' Second Set of Interrogatories and Requests for Production of Documents ("Second Requests"). Dkt. 45, Ex. B.

Twin Falls' Second Requests sought similar information as the First Requests, but requested such information with respect to The Surgery Center since SIASC noted in its interrogatory responses to the First Requests that the membership interest in SIASC is owned "100% by The Surgery Center, PLLC." *Compare* Dkt. 41, Ex. B *with* Dkt. 45, Ex. B. For example, while Interrogatory 1 of the First Requests asked SIASC to identify "the total value of all cash held by SIASC" and to "identify with specificity each account in which cash is held," Interrogatory 15 in the Second Requests asked SIASC to identify "each and every bank account into which money generated from [SIASC's] business activities was deposited since January 1, 2018 by providing the location, financial institution, account number and current balance of each account, including but not limited to bank accounts held in the name of The Surgery Center or any member of The Surgery Center." Dkt. 41, Ex. B at 15; Dkt. 45, Ex. B at 32.

On Wednesday, June 10, 2020, Mr. Rosa notified Twin Falls' counsel by email that he was "in the midst of moving three transactions toward closing," but that he had received Twin Falls' June 9, 2020 correspondence and discovery requests and would respond later

---

[5] Specific page citations herein are to the CM/ECF generated page number of a referenced document.

that afternoon. Dkt. 45, Ex. B at 13. In the early morning hours of June 11, 2020, Mr. Rosa wrote an email again explaining his position that Twin Falls was required to withdraw its Motions to Compel before he would meet and confer, that Twin Falls itself had failed to meet and confer prior to filing the Motions to Compel, and that he would be happy to meet and confer only if Twin Falls first withdrew its Motions to Compel. *Id*. at 14.

Twin Falls' counsel responded the same day, highlighting that they had attempted to meet and confer several times before filing the Motions to Compel, and that they were asking, for a third time after filing the Motions to Compel, to meet and confer to discuss the deficiencies with SIASC's discovery responses. *Id*. at 15. Twin Falls also noted that the Motions to Compel were not moot because they were necessitated by SIASC's refusal to participate in discovery, which forced Twin Falls to incur significant fees. Twin Falls concluded, "[i]f you want to moot the motions, please give Russ Baldwin a call to discuss arrangements for your client to reimburse those costs. To be clear, however, that will not resolve our disputes as to the deficiencies of your client's responses." *Id*. at 16.

Mr. Rosa subsequently responded, "[i]f it is your position that the scope of the current motions to compel is narrowed to seeking an award of fees and costs, then please confirm that is the case. Otherwise, I am content to let the Court resolve the merits of the parties' position." *Id*. at 14. Mr. Rosa also stated, "[i]f you wish to meet and confer for purposes of potentially avoiding a motion to compel *further* responses, then please forward an agenda of issues you wish to discuss . . . I will then respond with dates and times at which I am available to have a discussion by telephone." *Id*. (emphasis in original). Mr. Rosa also agreed to the July 8, 2020 deposition of SIASC's corporate designee, but stated

MEMORANDUM DECISION AND ORDER - 10

Ms. Wensink was unavailable for a deposition on June 25, 2020, and that he would follow-up with a new date for her deposition at a later time. *Id*.

Twin Falls' counsel immediately sent Mr. Rosa the requested "agenda" of issues to discuss during a meet and confer call, and noted it was imperative that a call occur by June 12, 2020. Dkt. 50-5, Ex. 4 at 3. Mr. Rosa responded the evening of June 12, 2020, that he was unavailable for a meet and confer conference until Tuesday, June 16, 2020. *Id*. at 2. Counsel for Twin Falls and Mr. Rosa met and conferred via phone on June 16, 2020. *Id*. During the call, Mr. Rosa agreed to remove the general and form objections from SCIASC's responses to the First Requests. Dkt. 50-1, ¶ 6. However, when SIASC later provided Amended Objections and Responses to Twin Falls' First Requests on June 24, 2020, the general and form objections had not been removed. *See generally*, Dkt. 50-7, Ex. 6, at 4–16.

On June 18, 2020, Twin Falls served The Surgery Center with a subpoena for its corporate designee to testify and produce various documents during the July 8, 2020 30(b)(6) deposition of SIASC. Dkt. 50-12, Ex. 11. The Surgery Center did not formally object to the subpoena. Dkt. 50, at 10. However, Mr. Rosa advised Twin Falls' counsel by email on July 2, 2020, that The Surgery Center would not appear for the deposition or produce documents on July 8, 2020. Dkt. 50-13, Ex. 12. Neither The Surgery Center nor SIASC filed a motion to quash the subpoena or motion for a protective order to avoid responding to the subpoena or appearing at the deposition.

Although Twin Falls' reply in support of its Motion to Compel Responses was due June 22, 2020, and its reply in support of its Motion to Compel Deposition was due June

25, 2020, it did not file a reply to either motion. However, on July 6, 2020, SIASC filed a notice again stating that it had provided Objections and Responses to Twin Falls' First Requests on June 4, 2020[6] (Dkt. 46) and Amended Objections and Responses to Twin Falls' First Requests (referenced above) on June 24, 2020. Dkt. 47; *see also* Dkt. 50-7, Ex. 6. The deposition of Ms. Wensink also occurred on July 6, 2020. Dkt. 49-4, Ex. 2; Dkt. 50-13, Ex. 12.

On July 10, 2020, SIASC filed another notice stating it had served Twin Falls with Second Amended Objections and Responses to Twin Falls' First Requests on July 10, 2020, in the form of a supplemental document production. Dkt. 48, at 2. SIASC also filed its Motion for Protective Order on July 10, 2020. Dkt. 49. Mr. Rosa's declaration ("Third Rosa Declaration") in Support of the Motion for Protective Order states that SIASC's supplemental document production on July 10, 2020, consisted of over 1,000 pages of documents. Dkt. 49-4, ¶ 12.

The Motion for Protective Order contends that SIASC learned, on July 1, 2020, of a data breach of a United States government website that contains SIASC's confidential provider information. Dkt. 49-2. Specifically, in a "possible attempt to subvert the discovery process," two employees of Twin Falls' parent corporation, AmSurg Holdings, allegedly logged into the United States Department of Health and Human Services Center

---

[6] The First Rosa Declaration stated SIASC served its Objections and Responses to the First Requests on June 5, 2020. Dkt. 41, ¶ 5. The July 6, 2020 notice instead states SIASC's Objections and Responses to the First Requests were served on June 4, 2020. Dkt. 46, at 2. As such, it is unclear whether SIASC's Objections and Responses to the First Requests were served on June 4 or June 5, 2020. Either way, SIASC served its Objections and Responses to the First Requests more than three weeks after its extended and self-selected deadline for doing so.

for Medicare and Medicaid Services, Provider, Enrollment, Chain and Ownership System

("PECOS") web site as "Active Staff" for SIASC. *Id*. at 2. SIASC alleges the two AmSurg

employees may have accessed SIASC's confidential information contained in the PECOS

system—such as SIASC's "personal demographic and credentialing information"—at

some point between February 2020 and July 1, 2020.[7] *Id*.; Dkt. 49-3, ¶¶ 4–5.

Upon learning of the potential data breach, Mr. Rosa contacted Twin Falls' counsel

on July 7, 2020—the day before the rescheduled (for a third time) deposition of SIASC's

corporate designee—requesting assurances by the end of the day that any information

obtained through AmSurg's access to SIASC's data on the PECOS website would not be

used in discovery. This timing was notable because Ms. Wensink's deposition occurred on

July 6, 2020, and neither she, nor Mr. Rosa, made any mention of a data breach during that

deposition. Dkt. 49-4, Ex. 2. When Twin Falls apparently did not respond by the end of the

day, Mr. Rosa again unilaterally cancelled SIASC's 30(b)(6) deposition the night before it

---

[7] SIASC believes AmSurg employees accessed SIASC's information on the PECOS site because, on July 1, 2020, Ms. Wensink noticed two AmSurg employees, Amanda Rosson and Ashley Stone, listed as "Active Staff" for SIASC on the PECOS site, and both had "amsurg.com" email addresses. Dkt. 49-3, at ¶ 5. Ms. Wensink does not know Ms. Rosson or Ms. Stone; neither individual was an employee of SIASC and neither has ever had authorization to log into PECOS on behalf of SIASC. *Id*. at ¶ 6. Ms. Wensink was on the PECOS site every two to three days between December 2019 and February 2020 because she was changing SIASC's ambulatory surgery center's name to "The Surgery Center." *Id*. at ¶ 4. During that time, Ms. Wensink never saw any users for SIASC listed on the staff page of the website. When Ms. Wensink logged into the system to change her password on July 1, 2020, she immediately noticed Ms. Rosson and Ms. Stone were designated as "Active Staff" for SIASC. *Id*. at ¶ 5. Ms. Wensink took a screenshot of the PECOS page listing Ms. Rosson and Ms. Stone as SIASC's PECOS users, deleted both as users, and contacted customer support for PECOS to inquire how two unauthorized users had gained access on behalf of SIASC. *Id*. at ¶¶ 8, 9; Dkt. 49-3, Ex. 1. Customer service for PECOS responded, "[u]nrecognizable names can be due to a person who has authority on your behalf to edit or change data. This is commonly the billing, HR or credentialing group may have initiated the request. You should check with them first." Dkt. 49-3, at ¶ 9. Ms. Wensink notes that no one from SIASC ever initiated a request to add Ms. Rosson or Ms. Stone as SIASC's end users on the PECOS website. *Id*., at ¶ 10.

was scheduled to occur.[8]

However, the day after the July 8, 2020 deposition was supposed to have taken place, Mr. Rosa discovered that Twin Falls' counsel *had* actually responded by 5:00 p.m. on July 7, 2020, although they did so by 5:00 p.m. Pacific Daylight time, not by 5:00 p.m. Mountain Standard time, as Mr. Rosa had requested.[9] Dkt. 49-4, ¶ 6. It is not clear why Mr. Rosa did not notice until two days later that Twin Falls had, in fact, responded by the end of the day on July 7, 2020.

Twin Falls' July 7, 2020 response to Mr. Rosa's allegations regarding a potential data breach stated that Twin Falls' counsel had "no knowledge of any 'incursions' into SIASC's online account with PECOS, including any 'unauthorized incursions.'" Dkt. 49-4, Ex. 2. Twin Falls' counsel confirmed that she and her co-counsel would make inquiries with their client, but asked Mr. Rosa to identify when he became aware of the purported breach and to provide any documentation of such breach so counsel could make effective inquiries. *Id*. Twin Falls' counsel also stated she understood that a person is able to access PECOS information only if authorized to do so by the provider itself—*i.e.*, by SIASC. *Id*. However, Twin Falls' counsel "unequivocally confirm[ed] that we have no copies or knowledge of any PECOS information relating to SIASC. Consequently, we can also

---

[8] The Third Rosa Declaration does not specify how Mr. Rosa cancelled the deposition or whether he notified Twin Falls' counsel of such cancellation. In subsequent informal communications with the Court, Twin Falls' counsel noted that Mr. Rosa and his witnesses simply failed to appear for the deposition, that Mr. Rosa did not answer Twin Falls' counsel's attempts to reach him by phone at the deposition's start time, and that Mr. Rosa also failed to respond to subsequent voice messages.

[9] Mr. Rosa apparently requested a response by 5:00 p.m. Mountain Standard time because this Court is under Mountain Standard time. However, Mr. Rosa lives and practices in Arizona, under Pacific Daylight time. In any event, Twin Falls' response was sent on July 7, 2020, at 5:02 Mountain Standard time, and 4:02 Pacific Daylight time. Dkt. 49-4, Ex. 2.

confirm that no such information has been used to facilitate Twin Falls' discovery in aid of execution to date, including yesterday's deposition." *Id*.

Counsel also noted, "Twin Falls has now properly noticed SIASC's deposition ***three times***—twice for dates of ***your client's choosing***. Failure to appear tomorrow . . . would seem to be the very definition" of evading SIASC's discovery obligations as a judgment debtor, "something made clear by the fact that you made no mention of any purported 'incursions' just yesterday at Ms. Wensink's deposition." *Id*. Twin Falls' counsel concluded, SIASC "must appear tomorrow unless there is a protective order in place. There is none. Consequently, we will expect SIASC to appear for its deposition tomorrow morning at 8 a.m." *Id*. Counsel also warned that if SIASC failed to appear, Twin Falls would "seek sanctions from the Court for your client's—and your—open and obvious contempt for the Court's processes and the federal rules[.]" *Id*.

Given Mr. Rosa's representations, on July 6, 2020, that SIASC had served Amended Objections and Responses to Twin Falls on June 24, 2020, the Court's clerk contacted counsel for both parties by email on July 10, 2020, to inquire about the status of Twin Falls' Motions to Compel. The Court's clerk asked counsel to advise the Court as to whether SIASC's subsequent production mooted the Motion to Compel Responses, as well as whether the July 6, 2020 deposition mooted the Motion to Compel Deposition. Mr. Rosa's co-counsel responded that SIASC had served Twin Falls with original and supplemental discovery responses, that the deposition of Ms. Wensink had occurred on July 6, 2020, and that SIASC was preparing a Motion for Protective Order to file later that day. Dkt. 50-6, Ex. 5.

Twin Falls' counsel responded that SIASC's First Amended Objections and Responses to Twin Falls' First Requests had not addressed any of the issues noted in the Motion to Compel Responses, and in fact, compounded such issues because the responses were inconsistent, contradictory, and inaccurate. Twin Falls stated that it planned to file a position paper further describing the status of the motions no later than Monday, July 13, 2020, but would instead file its position paper as a reply to the Motions to Compel if the Court preferred.[10] Twin Falls' counsel confirmed that the July 6, 2020 deposition of Ms. Wensink occurred, but noted that this was not SIASC's 30(b)(6) deposition, and that Ms. Wensink's testimony illustrated there were falsehoods and large gaps in SIASC's production. Twin Falls' counsel confirmed they had unexpectedly received 1,000 pages of documents from SIASC earlier that morning and were in the process of reviewing them. Twin Falls' counsel also informed the Court's clerk that SIASC had failed to appear for its 30(b)(6) deposition on July 8, 2020, and that Twin Falls intended to oppose SIASC's Motion for a Protective Order. Finally, Twin Falls' counsel requested a discovery conference with either the Court or the Court's clerk following Twin Falls' July 13, 2020 filing.[11]

On July 15, 2020, the Court's clerk notified the parties that the Court believed a discovery conference would have little impact since Twin Falls had already filed its

---

[10] The Court's clerk requested that Twin Falls' counsel file the position paper as a joint reply to the pending Motions to Compel.

[11] The Court's clerk responded that the Court would review SIASC's Motion for a Protective Order and Twin Falls' reply brief the following week and then advise the parties regarding how the Court would like to proceed.

Motions to Compel and SIASC had already filed its Motion for a Protective Order. The Court's discovery dispute procedure requires that parties contact the Court's clerk *prior* to filing discovery motions to schedule a discovery conference. https://id.uscourts.gov/district/judges/nye/Discovery_Disputes.cfm. Before a discovery conference, counsel for both parties are required to submit a short paper detailing their respective positions. *Id*. The Court's clerk will then attempt to mediate the discovery dispute in an effort to avoid the time and expense associated with motion practice. *Id*. If the mediation is unsuccessful, the parties may *then* file discovery motions. *Id*. Since both Twin Falls and SIASC filed discovery motions without any attempt to utilize the Court's dispute process, a discovery conference after such filings would have been too little, too late.

Twin Falls filed its Response to SIASC's Motion for a Protective Order on July 30, 2020. Dkt. 51. SIASC filed another notice on August 6, 2020, stating that it had served Twin Falls with objections and responses to Twin Falls' Second Requests on July 27, 2020, and with an additional document production on August 6, 2020. Dkt. 52. When SIASC did not file a reply in support of its Motion for a Protective Order by the August 13, 2020 deadline, the Court's clerk again contacted counsel, on August 20, 2020, to determine whether SIASC's various supplemental productions had cured the deficiencies identified in Twin Falls' Motion to Compel Responses. The clerk also asked whether the Rule 30(b)(6) deposition of SIASC's corporate designee had taken place.

Mr. Rosa responded by directing the Court to SIASC's subsequent discovery responses and document productions, notice of which (as highlighted above) was provided

to the Court on July 6, July 10, and August 6, 2020. Dkts. 46, 47, 48, and 52. Mr. Rosa stated that SIASC had provided 1,879 pages of documents in response to Twin Falls' First and Second Requests. Mr. Rosa also contended that he had filed a Reply and Supplemental Declaration in support of the Motion for Protective Order, but that he realized, upon receipt of the clerk's email, that the filing did not appear on CM/ECF. Mr. Rosa refiled the Reply and Supplemental declaration on August 20, 2020. Dkt. 53. Mr. Rosa also noted that SIASC had recently learned of further unauthorized access by AmSurg into SIASC's online management profile with PECOS, and that evidence of such access was filed with SIASC's Reply in support of the Motion for Protective Order. Mr. Rosa stated he was unaware of any further meet and confer requests or allegations as to the sufficiency of SIASC's responses to the First and Second Requests. Finally, Mr. Rosa maintained that SIASC remained willing to provide its corporate representative for a deposition upon resolution of the pending Motion for Protective Order.

Twin Falls' counsel had a much different take on SIASC's discovery responses and document production. Twin Falls' counsel noted that SIASC had steadfastly refused to cure the deficiencies noted in Twin Falls' Motion to Compel Responses, or to make its corporate representative available for a deposition. Twin Falls' counsel also contended that while SIASC had made subsequent document productions, such productions were in response to the Second Requests, and did not cure the deficiencies detailed in the Motion to Compel Responses. Finally, Twin Falls' counsel noted that SIASC's belated Reply to the Motion

for a Protective Order was untimely,[12] that such filing was the first time that Twin Falls' counsel had been notified of the new alleged data breaches, and that counsel continued to have no reason to believe there had been *any* unauthorized access of SIASC's nonpublic information.

Having outlined the extensive history and numerous filings and correspondence associated with the instant discovery dispute, the Court turns to the substance of the pending motions.

### III. ANALYSIS

#### A. Motion to Compel Responses (Dkt. 39) and Motion to Compel Deposition (Dkt. 40)[13]

##### 1. Legal Standard

Pursuant to Federal Rule of Civil Procedure 69, a judgment creditor "whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). The purpose of post-judgment proceedings "is to discover assets that

---

[12] Twin Falls itself filed an untimely Joint Reply brief to the Motions to Compel. As mentioned, Twin Falls' Reply to the Motion to Compel Requests was due on June 22, 2020, and its Reply to the Motion to Compel Deposition was due on June 25, 2020. Twin Falls did not file a Reply by either date and did not seek the Court's guidance on whether it should file either a reply or a position paper until July 10, 2020. The Court will consider both Twin Falls and SIASC's untimely replies but cautions the parties that it will not consider any future briefs filed outside of the timeframe designated under Local Civil Rule 7.1 should they file any further motions with this Court. Dist. Idaho Loc. Civ. R. 7.1(b)(3) and (c)(1).

[13] With the exception to case citations in support of one point in its Reply in support of the Motions to Compel, Twin Falls did not cite any caselaw in support of either of its Motions to Compel. *Compare* Dkts. 39 and 40 *with* Dkt. 50, at 4–5 (citing two cases stating general or form objections to discovery requests are inappropriate). Although the Court recognizes that the motions were filed with haste in an attempt to secure discovery, it advises counsel to properly support any future motions with legal authority rather than delegating this responsibility to the Court.

might be available to satisfy the judgment, and, following discovery, to execute on those assets." *JP Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co., Ltd.*, 707 F.3d 853, 868 (7th Cir. 2013) (citation omitted).

The "rules governing discovery in [post-judgment] execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014). As one court explained:

> Under federal law, the scope of [post-judgment] discovery is very broad. 'Debtor examinations are intended 'to allow the judgment creditor a wide scope of inquiry concerning property and business affairs of the judgment debtor,' and 'to leave no stone unturned in the search for assets which might be used to satisfy the judgment.'" *Salameh v. Tarsadia Hotel*, 2016 WL 29618, *2 (S.D. Cal. Jan. 4. 2016) (citing *United States v. Feldman*, 324 F. Supp. 2d 1112, 1116 (C.D. Cal. 2004)). Thus, 'the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.' *Caisson Corp. v. County West Building Corp.*, 62 F.R.D. 331, 334 (E.D. Pa. 1974). Even though Rule 69 discovery may resemble the proverbial fishing expedition, 'a judgment creditor is *entitled* to fish for assets of the judgment debtor.' *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, *4 (N.D. Cal. Dec. 19, 2009) (emphasis in original).

*Textron Fin. Corp. v. Gallegos*, 2016 WL 4077505, at *3 (S.D. Cal. Aug. 1, 2016).

Not only is the scope of post-judgment discovery broad, but "the presumption should be in favor of full discovery of any matters arguably related to [the judgment creditor's] efforts to trace [the debtor's] assets and otherwise to enforce its judgment." *Credit Lyonnais, S.A. v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998).

Further, discovery in post-judgment proceedings is not limited to questioning the judgment debtor. Instead, a "judgment creditor is entitled to obtain information from parties and non-parties alike, including information about assets upon which execution can

issue or about assets that have been fraudulently transferred." *Henry v. Rizzolo*, 2012 WL 13725, at \*3 (D. Nev. Jan. 4, 2012) (citations omitted); *Caisson*, 62 F.R.D. at 335 ("There is no doubt that third parties can be examined in relation to the financial affairs of the judgment debtor."); *Credit Lyonnais*, 160 F.3d at 430 ("A party may depose almost anyone, including corporations, who may provide relevant information.").

Generally, a judgment creditor may inquire into a third party's knowledge of the judgment debtor's assets, but inquiry into the assets and finances of the third party is not permitted. *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977). However, there are exceptions to this rule. *Id*. Discovery into a third party's assets is permissible "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Id*.; *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC*, 2020 WL 1465738, at \*3 (D. Idaho Mar. 25, 2020) (allowing discovery of nine third parties because each was owned—in whole or in part—by the same individual who owned the judgment debtor company and where it appeared he was trying to "dispose of" or "transfer" assets between companies "to frustrate [the opposing party's post-judgment] discovery request[s]"); *see also Falicia v. Advanced Tenant Services, Inc*., 235 F.R.D. 5, 9 (D.C. 2006) (allowing discovery of two non-party companies owned by members of the same family that owned the judgment debtor corporation where there was evidence in the record that the two companies were not business pursuits created totally independent from the judgment debtor, and in fact appeared to be veiled attempts to hide the assets of the judgment debtor).

MEMORANDUM DECISION AND ORDER - 21

*2.  Discussion*[14]

Twin Falls seeks an order compelling: (1) SIASC to provide complete and accurate responses to Twin Falls' First Requests[15]; (2) SIASC and its corporate parent, The Surgery Center, to appear for deposition; and (3) SIASC to desist from further efforts to obstruct discovery absent a protective order from this Court. Due to "the egregious conduct by SIASC and its counsel," Twin Falls also requests an award of sanctions in the form of Twin Falls' attorneys' fees incurred since May 13, 2020, against both SIASC and Mr. Rosa, individually. Dkt. 50, at 2.

a.  <u>Interrogatory Responses</u>

As highlighted above, SIASC's responses to the First Requests are clearly inadequate. The responses, even after amended and after Mr. Rosa agreed to remove general and form objections, are replete with boilerplate objections.[16] *See generally*, Dkt. 50-3, Ex. 2; Dkt. 50-7, Ex. 6; Dkt. 50-8, Ex. 7. For example, SIASC's amended response

---

[14] As highlighted *supra*, section II, Twin Falls has submitted documentation to illustrate its numerous attempts to meet and confer prior to filing the Motions to Compel. Although, in its correspondence with Twin Falls' counsel, SIASC maintained that Twin Falls' counsel did not attempt to meet and confer prior to filing the Motions to Compel, SIASC has not raised this issue in any of its numerous filings with the Court in response to the Motions to Compel. *See*, Dkts. 41–48, 52. Given the significant correspondence between the parties documenting Twin Falls' repeated unsuccessful attempts to secure discovery responses, the Court determines Twin Falls adequately attempted to confer with SIASC in good faith, and thus satisfied the requirements of Federal Rule of Civil Procedure 37(a)(1).

[15] SCIASC's responses to the Second Requests are not currently at issue and are not further addressed herein.

[16] SIASC served Twin Falls with its Second Amended Objections and Responses to the First Requests on July 10, 2020. Dkt. 48. SIASC filed a notice stating its Second Amended Objections and Responses were served "in the form of supplemental document production." *Id.* at 2. Thus, it appears that SIASC did not actually serve written Second Amended Objections and Responses to the First Requests. Twin Falls' counsel has also informally advised the Court that SIASC has not provided any meaningful revision to their interrogatory responses that would render them responsive or complete.

to Interrogatory 3, requesting the total value of all unpaid accounts receivable owed to SIASC, states "SIASC objects to this Interrogatory on the basis that it is overly broad, unduly burdensome and vague. Without waiving the aforementioned objections, SIASC responds to this Interrogatory as follows: SIASC does not have any unpaid accounts. SIASC does not have any accounts receivable documents in its possession and/or control." Dkt. 50-7, Ex. 6 at 9. Boilerplate objections are improper in federal court. *See, e.g., A. Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections") (quoting *Paulsen v. Case Corp.*, 168 F.R.D. 285, 289 (C.D. Cal. 1996)); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper."); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (finding objections that documents requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable).

Even if SIASC's objections were not improper, Ms. Wensink's deposition testimony reveals many of SIASC's limited responses are inaccurate. For example, with respect to Interrogatory 3, Ms. Wensink testified that SIASC still maintains payor contracts with the same insurance providers as it did in December of 2018, that some payors still pay SIASC for services, and that SIASC still bills payors under SIASC if the payors so request. Dkt. 50-8, Ex. 7 at 2 (quoting Wensink deposition at 40:14–18; 46:19-24; 47:2–5). SIASC cannot accurately contend it has no accounts receivable when its Administrator testified

that some payors still pay SIASC directly for its services. Similarly, in response to Interrogatory 8, requesting identification of each and every bank account maintained by or for SIASC since January 1, 2018, SIASC's amended responded stated "none." Dkt. 50-7, Ex. 6 at 10. Yet, Mrs. Wensink admitted in her deposition that SIASC had a bank account in 2018, and also admitted that SIASC paid Mr. Rosa with checks in 2018, demonstrating that Mr. Rosa must also have known SIASC's amended response to Interrogatory 8 was false. Dkt. 50, at 4 (quoting Wensink deposition at 94:5–17); Dkt. 50-8, Ex. 7 at 3 (quoting Wensink deposition at 94:24–95:8).

SIASC has steadfastly maintained that Twin Falls is required to file a Motion to Compel further responses in order to obtain additional information from SIASC, and that SIASC is not entitled to any additional responses until it has done so. *See*, *e.g*., Dkt. 41, at 4; Dkt. 45, at 3; Dkt. 50-5, Ex. 4 at 7. SIASC suggests the Motions to Compel are moot because "[w]here a party responding to the motion agrees to provide the discovery requested, a motion to compel becomes moot." Dkt. 45, at ¶ 6 (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co*., LLC, 314 F.R.D. 85, 88 (S.D.N.Y. 2016)) ("Putnam"). However, in *Putnam*, the plaintiff specifically agreed to turn over certain documents, and actually did so, before the defendant filed its reply in support of its Motion to Compel. *Id*. Because the defendant in *Putnam* did not identify any objections to plaintiff's disclosure in its reply, the Court determined defendant's Motion to Compel was moot with respect to the specific discovery plaintiff had produced. *Id*. By contrast, although SIASC has produced some documents in this case, Twin Falls has repeatedly advised the Court, both on the record and informally, that SIASC's production has not cured the deficiencies addressed in the

MEMORANDUM DECISION AND ORDER - 24

Motions to Compel. Twin Falls' Motions to Compel are not moot because Twin Falls has still yet to obtain adequate interrogatory responses, document production, or SIASC's Rule 30(b)(6) deposition.

Moreover, Federal Rule of Civil Procedure 26(e) provides that a party who has responded to discovery requests "must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the discovery or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1); *see also Medina v. Cty. of San Diego*, 2014 WL 4793026, at *12 (S.D. Cal. Sept. 25, 2014) (reminding the responding party of its duty to supplement or correct incomplete or inaccurate discovery responses). Because Ms. Wensink's deposition testimony illustrates that many of SIASC's discovery responses appear to be demonstrably false, it is SIASC's duty to correct and/or supplement its responses, and not Twin Falls' burden to file a third motion to compel. *See* Dkt. 50-8, Ex. 7 (detailing material inaccuracies in SIASC's interrogatory responses, as evidenced by Ms. Wensink's deposition testimony).

Consequently, the Court will compel SIASC to amend its interrogatory responses to Interrogatories 3–4, 6–9, and 12–14 of the First Requests, to correct all material inaccuracies, remove all general and boilerplate objections, and to provide full and complete responses, within seven (7) days of the date of this Order. Failure to accurately and fairly comply with the Court's order may result in further sanctions.

b.  Document production

SIASC's responses to the First Requests for documents are similarly incomplete and evasive. For example, in response to Requests for Production 1 and 16, seeking all periodic and annual balance sheets, income statements, cash flow and all other financial statements, including all unaudited financial statements prepared for SIASC between January 1, 2018, to the present, SIASC responded: "SIASC is in the process of assembling and verifying the accuracy of a balance sheet and income statement for 2018, 2019, and 2020 (year-to-date), intended to represent the assets described above as the debts of SIASC. As soon as it is available, it will be produced." Dkt. 50-7, Ex. 6 at 12, 15. This is a clear admission that such documents exist. However, SIASC simultaneously responded that it had no general ledger entries, no bank account statements, no sale of assets, no projections, forecasts and/or budgets, no audited financial statements, and no cash reserves since January 1, 2018. *Id*. at 12-16. SIASC's response appears not only contradictory, but also implies that SIASC is altering or correcting financial documents specifically for production in litigation, rather than producing them as they were prepared and kept in the ordinary course of business. In fact, on June 29, 2020, SIASC produced financial documents dated June 29, 2020, which appear to have been created for the purposes of this litigation, and later produced numerous similar documents. Dkt. 50, at 6–7.

Federal Rule of Civil Procedure 34 provides that a party must produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i); *see also City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011)

(acknowledging that producing documents in native format "will provide [parties] with the metadata necessary to identify the provenance of each document and put it into its proper context[.]"). As a result, the Court finds that SIASC must produce documents in their original format and must also produce all electronically stored information in its native format, with all existing metadata. *United States ex rel. Humane Society of the United states v. Westland/Hallmark Meat Co., et al.*, 2012 WL 12886501, at *4 (C.D. Cal. Sept. 26, 2012) (finding plaintiff had complied with the requirements of Rule 34(b)(2)(E)(i) by producing all electronically stored information in its native format, with all existing metadata).

Like its amended interrogatory responses, many of SIASC's amended responses to the First Requests for Production were also identified as inaccurate during Ms. Wensink's deposition. For instance, Request for Production 4 sought all documents "that relate in any way to any contracts or other agreements, either written or oral, to which [SIASC] has been a party since January 1, 2018." Dkt. 50-7, Ex. 6 at 12. In its amended response, SIASC stated: "None." *Id*. However, Ms. Wensink acknowledged in her deposition that SIASC currently has a lease agreement and is thus currently subject to a contract. Dkt. 50-8, Ex. 7 at 5 (citing Wensink deposition testimony at 93:25-94:2).

Request for Production 13 sought "all documents that relate in any way to the sale or disposition of [SIASC]'s assets since January 1, 2018." Dkt. 50-7, Ex. 6 at 14. SIASC responded "[n]o assets of SIASC have been sold since January 1, 2018." *Id*. However, Ms. Wensink testified in her deposition that The Surgery Center now owns all of SIASC's assets, and that, before The Surgery Center, SIASC owned all of its assets. Dkt. 50-8, Ex.

7 at 6–7 (citing Wensink deposition at 108:18–110:1). Clearly, SIASC must have sold its assets to The Surgery Center (unless, perhaps, it fraudulently transferred them).

Given the material inconsistencies identified in SIASC's responses to Twin Falls' First Requests for Production and SIASC's insufficient and incomplete document production, the Court will compel SIASC to provide full and truthful amended responses to Requests for Production 3–4, 6, 8, 12–13, and 16, as well as a complete production of documents, as kept in the ordinary course of business, in response to First Requests for Production 1-19, within seven (7) days of the date of this Order. SIASC must also provide Twin Falls with a sworn verification confirming that the records are accurate. Failure to comply with the Court's order may result in further sanctions.

c.  Deposition Attendance—SIASC

SIASC's conduct with respect to its 30(b)(6) deposition has been nothing short of abusive. At SIASC's request, Twin Falls moved the initial 30(b)(6) deposition from April 27, 2020, to May 18, 2020. Despite this courtesy, SIASC unilaterally cancelled the May 18, 2020 deposition approximately twelve hours before it was scheduled to occur. SIASC used the COVID-19 pandemic as an excuse for the last-minute cancellation. However, the pandemic was raging when SIASC first asked Twin Falls to move the deposition to May 18, 2020, and SIASC and Twin Falls agreed on a remote deposition to limit potential risks. Further, even if an extension was required due to the pandemic and Dr. Doble's position as an ENT, SIASC provided neither Twin Falls nor this Court with any explanation as to why the May 18, 2020 deposition could not have been cancelled with sufficient notice to avoid the expense Twin Falls incurred preparing for it.

MEMORANDUM DECISION AND ORDER - 28

After SIASC failed to appear for the May 18, 2020 deposition and Twin Falls filed its Motion to Compel Deposition, Mr. Rosa informed Twin Falls that SIASC would make a corporate representative available for a deposition on July 8, 2020. Based on this representation, Twin Falls sent a Second Amended Notice of Deposition on June 9, 2020. Dkt. 50-10, Ex. 9.

During the July 6, 2020 deposition of Ms. Wensink, Mr. Rosa confirmed SIASC's July 8, 2020 deposition and stated that SIASC's corporate representative would be Dr. Doble. Dkt. 50-1, ¶ 12. However, the next day, Mr. Rosa sent an email threatening that SIASC would not appear for the deposition due to the alleged data breach discovered by Ms. Wensink on July 1, 2020. Dkt. 49-4, at ¶ 4. Mr. Rosa made no mention of such data breach at Ms. Wensink's July 6, 2020 deposition, but stated in his July 7, 2020 email that he would cancel the 30(b)(6) deposition unless he immediately received a written denial by AmSurg  and Twin Falls of any use of SIASC's information obtained from accessing SIASC's accounts with PECOS or other government registry. Dkt. 50-11, Ex. 10 at 4.

Twin Falls' counsel responded to Mr. Rosa's July 7, 2020 email by the end of the day, and "unequivocally" confirmed that they had "no copies or knowledge of any PECOS information relating to SIASC" and "that no such information has been used to facilitate Twin Falls' discovery in aid of execution to date, including yesterday's deposition." *Id*. Mr. Rosa either missed or ignored this communication and, along with Dr. Doble, simply failed to appear for the 30(b)(6) deposition the next day.[17]

---

[17] Even if Twin Falls had not responded by the end of the day, SIASC's cancellation of the deposition would have been without justification. SIASC's failure to appear at a twice-rescheduled deposition to obtain

If a data breach occurred—which Twin Falls disputes—it would not provide justification for SIASC's failure to comply with the properly noticed deposition. SIASC did not file its Motion for a Protective Order before failing to appear for the July 8, 2020 deposition. It is a "settled and universally recognized proposition" that a "party is not empowered to grant itself, *de facto*, the relief it seeks from the Court by delaying in filing a motion to such an extent that it cannot be resolved prior to the scheduled event." *Nationstar Mortg., LLC v. Flamingo Trails No.7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 336 (D. Nev. 2016) (internal citation omitted). "The odor of gamesmanship is especially pronounced in the context of discovery disputes where it appears parties routinely seek to delay their discovery obligations by filing [a] motion for protective order on the eve of a . . . noticed deposition." *Cardoza v. Bloomin' Brands, Inc*., 141 F. Supp. 3d 1137, 1141 (D. Nev. 2015). SIASC could have filed its Motion for Protective Order after Ms. Wensink discovered the purported security breach on July 1, 2020, but instead waited to do so until July 10, 2020, two days after the Rule 30(b)(6) deposition was supposed to have occurred.

Moreover, even if SIASC had properly filed its Motion for Protective Order prior to the deposition, the Ninth Circuit has long made clear that "it is for the court, not the deponent or his counsel, to relieve him of the duty to appear.*" Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964). Thus, the "mere filing of a motion for protective order does not relieve a deponent of his duty to appear at a deposition; instead, that duty is relieved only by obtaining either a protective order or an order staying the

---

assurances regarding a purported security breach—rather than cancelling the deposition all together—was an egregious abuse of the discovery process.

deposition pending resolution of the motion for protective order." *Nationstar Mortg.*, 316 F.R.D. at 336; *see also* Fed. R. Civ. P. 37(d), Advisory Committee Notes (1993 Amend.) ("the filing of a [motion for protective order under Federal Rule 26(c)] is not self-executing—the relief authorized under that rule depends on obtaining a court's order to that effect."). SIASC did not obtain (or even seek) either a protective order or an order staying the 30(b)(6) deposition before July 8, 2020. As such, SIASC was required to attend the July 8, 2020 deposition and its failure to do so is sanctionable. Fed. R. Civ. P. 37(d).

The Court will accordingly compel SIASC to appear for its 30(b)(6) deposition within ten (10) days of the date of this Order. Failure to comply with the Court's order may result in further sanctions.

    d.  <u>Deposition Attendance and Document Production—The Surgery Center</u>

After receiving SIASC's interrogatory response stating The Surgery Center owned 100% of the membership interest in SIASC, Twin Falls sent a subpoena to The Surgery Center on June 18, 2020, requiring The Surgery Center to appear for deposition and produce documents on July 8, 2020. Dkt. 50-11, Ex. 10. Mr. Rosa acknowledged in an email to Twin Falls' counsel that he had received the subpoena but stated The Surgery Center would not appear or produce documents on July 8, 2020. Dkt. 50-13, Ex. 12. Mr. Rosa contended the subpoena was procedurally improper and that SIASC "has not and will not consent to merging or commingling the different entities or permit manipulation of the Rules of Civil Procedure for the purposes of conducting discovery of non-party entities on shortened time." *Id*. The Surgery Center did not make formal objections to, or file a motion to quash, the subpoena, and SIASC did not seek a protective order or file a motion to quash

the subpoena with this Court.[18]

Under Federal Rule of Civil Procedure 45(a)(1)(c), a nonparty to a civil suit can be subpoenaed to appear at a deposition and/or produce documents relevant to the suit. Failure of a party to file a motion to quash or seek a protective order constitutes a waiver of any objections. *Evans v. Baxter Healthcare Corp.*, 2013 WL 3786313, at *2 (N.D. Cal. July 17, 2013). In addition, nonparty witnesses may prevent producing documents by serving the subpoenaing attorney with a written objection within 14 days after the subpoena is served. Fed. R. Civ. P. 45(c)(2)(B).

The Surgery Center did not formally object to the subpoena, either to the Court or to Twin Falls' counsel, and opted not to seek timely court intervention by filing a motion to quash or a motion for protective order. Formal written objections provide relief from complying with a subpoena only for the production of documents; written objections do not excuse a nonparty from testifying at a deposition. *BSNF Railway Co. v. Alere, Inc.*, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018). "When a nonparty wishes protection by the Court, the nonparty must seek out such protection, and the proper method to seek the Court's assistance after being served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena." *Id*. Even if a third party serves objections to a subpoena to testify at a deposition, "the fact that objections were served is *no excuse*

---

[18] Under Federal Rule of Civil Procedure 45, only the nonparty can prevent disclosure by objection; the party to whom the subpoenaed records pertain cannot simply object. *Scruggs v. Vance*, 2011 WL 6368297, at *10 (E.D. Cal. Dec. 19, 2011). A party must instead seek a protective order or file a motion to quash. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). Although the parties have not addressed the issue in their briefing, the Court assumes, for purposes of the present motion, that The Surgery Center is a third party.

*whatsoever* not to attend the deposition." *Aetna Cas. and Sur. Co. v. Rodco Autobody*, 130 F.R.D. 2, 3 (D. Mass. 1990) (emphasis in original). The Surgery Center was accordingly required to attend the deposition, even if Mr. Rosa's email objection somehow constituted a formal objection to the subpoena.

A nonparty that fails to timely and properly object to a subpoena generally waives any objection it may have had. *BNSF Railway Co*., 2018 WL 2267144, at *8 (citing *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 711 (D.S.C. 2017); *McCoy v. Southwest Airlines Co., Inc.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); *Baker v. Ensign*, 2014 WL 3058323, *6 (S.D. Cal. July 3, 2014)). However, "in unusual circumstances and for good cause, the failure to act timely will not bar consideration of objections to a Rule 45 subpoena." *Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006); *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 636 (C.D. Cal. 2005). Neither The Surgery Center nor SIASC has addressed The Surgery Center's noncompliance with the subpoena at all in any briefing before this Court, let alone established unusual circumstances or good cause that would justify ignoring the subpoena.

Since neither SIASC nor The Surgery Center properly moved to quash or modify the subpoena and the special circumstances doctrine does not apply, the Court finds any and all objections to the subpoena have been waived, including any objection to service or notice. Accordingly, the failure of The Surgery Center to appear for the July 8, 2020 deposition was a violation of the subpoena and there was no valid excuse for its failure to appear.

Pursuant to Federal Rule of Civil Procedure 37(a)(2), the Court compels The Surgery Center to comply with the subpoena within ten (10) days of the date of this Order.[19]

e.  Monetary Sanctions

Twin Falls requests an award of sanctions in the form of attorneys' fees incurred in pursuing post-judgment discovery since May 13, 2020, against both SIASC and Mr. Rosa. Because the Court grants both Motions to Compel, it is required, pursuant to Federal Rule of Civil Procedure 37, to order the party or deponent whose conduct necessitated the motions, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses incurred in making the motions, including attorney's fees.[20] Fed. R. Civ. P. 37(a)(5)(A). The Court may also award reasonable expenses, including attorney's fees, for SIAC's failure to supplement information as required by Federal Rule of Civil Procedure 26(a) or (e). Fed. R. Civ. P. 37(c)(1)(A). Finally, the Court may order sanctions for SIASC's repeated failure to appear for its Rule 30(b)(6) deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). The disobedient party has the burden of establishing a substantial justification or special circumstances that would make an award of expenses unjust.

---

[19] Although Twin Falls does not seek the imposition of the sanction of contempt against The Surgery Center, failure to appear can result in a prosecution of a third-party deponent for contempt. Fed. R. Civ. P. 45(g). The Court cautions The Surgery Center to be aware of this possibility should it be tempted to again fail to comply with the subpoena.

[20] The Court must not order this payment under certain circumstances not present here, such as where the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action. Fed. R. Civ. P. 37(a)(5)(A)(i). As highlighted above, Twin Falls attempted in good faith to obtain discovery responses for  nearly two months before filing its Motions to Compel. Nor can the Court find SIASC's nondisclosure or objections were substantially justified, or that other circumstances would make an award of expenses unjust. *Id.* at (a)(5)(A)(ii)-(iii). SIASC's conduct in failing to provide accurate and complete discovery responses for over five months and twice failing to appear for its Rule 30(b)(6) deposition constitutes an egregious abuse of the discovery process the Court cannot excuse.

*Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 784 (9th Cir. 1983).

Both parties and counsel may be held personally liable for expenses, "including attorney's fees," caused by the failure to comply with discovery. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980). Rule 37 sanctions "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id*. (alteration in original) (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976)). Imposing sanctions against a party and counsel jointly and severally is appropriate where it is unclear based on the record which is less blameworthy than the other. *In re George*, 322 F.3d 586, 592 (9th Cir. 2003) (citing *Int'l Union of Bricklayers & Allied Craftsmen Local Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401 & 1407 n. 8 (9th Cir. 1985)) (noting parties are in the best position between them as to who caused the sanctionable conduct). Here, while it is clear that both SIASC and Mr. Rosa blatantly disregarded the rules of discovery, it is not evident which party is more to blame. The Court thus finds it most appropriate to impose sanctions jointly and severally against SIASC and Mr. Rosa.[21]

The Court has granted the Motions to Compel in their entirety. SIASC has not established substantial justification or special circumstances excusing its failure to adequately respond to the First Requests, its failure to supplement its inaccurate responses,

---

[21] Since the sanctions the Court ultimately imposes will be joint and several, SIASC and Mr. Rosa are free to determine among themselves how the sanctions should be apportioned. They are both, however, responsible for the timely payment of the sanction to Twin Falls once the specific amount of an appropriate sanction is determined by the Court.

or its failure to appear at two properly noticed Rule 30(b)(6) depositions. Accordingly, Twin Falls shall submit a brief detailing the attorneys' fees and costs it has incurred with respect to its attempts to secure adequate responses to the First Requests and SIASC's 30(b)(6) deposition since May 13, 2020, within fourteen (14) days of the date of this Order, with the regular briefing schedule to follow.

### B.  Motion for Protective Order (Dkt. 49)

Due to the purported data breach by AmSurg into SIASC's secure PECOS profile, SIASC moved for a protective order limiting post-judgment discovery to persons, information, and documents either: (a) produced by SIASC in response to a specific request from Twin Falls; (b) obtained through demonstrably lawful means; and (c) publicly available. Dkt. 49-1, at 2. SIASC contends the data breach requires clear guidance from the Court in terms of what information can and cannot be discovered, as well as what can and cannot used as a basis for deposition examination. *Id*. SIASC suggests any "direct or indirect use of information obtained illegally would condone that illegality, undermine due process, and increase suspicion between parties in an already contentious manner."[22] *Id*. at 2–3.

### 1.  *Legal Standard*

Federal Rule of Civil Procedure 26 allows the recipient of a discovery request or a deponent to move for a protective order for, among other things, preventing the disclosure of commercial information. Fed. R. Civ. P. 26(c). Upon motion by a party or by a person

---

[22] It is illegal for any person to intentionally access a computer without authorization and thereby obtain information from any department or agency of the United States. 18 U.S.C. § 1030(a)(2)(B).

from whom discovery is sought, and for good cause shown, the Court may enter a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G).

Good cause is shown when a party sets forth the specific harm or prejudice that will result in the absence of a protective order. *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id*. (citing *Olympic Refining Co. v. Carter*, 332 F.2d 260, 264 (9th Cir. 1964)). Upon a showing of good cause, the court has discretion to issue a protective order that forbids a party from disclosing to other persons specific information acquired in discovery. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785–86 (3d Cir. 1994). "If a court finds particularized harm will result from disclosure of information to the public, then it balances the public and private interests to decide whether a protective order is necessary." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Ultimately, the trial court has broad discretion to decide when a protective order is appropriate and what degree of protection is required. *Id.*

### 2. Discussion

At the outset, the Court notes that SIASC's Motion for Protective Order does not comply with Federal Rule of Civil Procedure 26 because the Court cannot find that Mr. Rosa conferred in good faith with Twin Falls by unilaterally imposing conditions Twin

Falls' counsel had to meet by the end of the day, and then ignoring Twin Falls' end of the day response ensuring that it had no knowledge of any data breach, had not obtained any information through a purported data breach, and would conduct further investigation to ensure a data breach had not occurred. Dkt. 50-11, Ex. 10. Despite Twin Falls' attempt to comply with his last-minute demands, Mr. Rosa did not subsequently contact Twin Falls' counsel and instead immediately filed his Motion for a Protective Order. A court may deny a motion for a protective order due to a party's failure to meet and confer in good faith without proceeding to the merits of the motion. *Quintana v. USAA Life Ins. Co.*, 434 F. Supp. 3d 932, 939 (W.D. Wash. 2020); *see also Rogers v. Guirbino*, 288 F.R.D. 469, 479 (S.D. Cal. 2012) (holding a court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion.).

However, even if the Court excused the meet and confer requirement, it must also deny the Motion on the merits. SIASC argues that allowing confidential information unlawfully obtained from its PECOS profile to be used in discovery would subvert the discovery process and the integrity of the judicial system. SIASC suggests the "unauthorized access to the PECOS system and its timing indicate that Twin Falls NSC/AmSurg itself has the propensity to both invade privacy and break the law in pursuit of its apparent goal of litigating SIASC into some form of submission." Dkt. 49-2, at 6. SIASC also argues that because the protective order it seeks is limited to restricting in discovery the use of any material illegally obtained through unauthorized access, "there exists little public interest balancing analysis for the Court to undertake." *Id*. Finally, SIASC contends the specific harm that would result in the absence of a protective order

"includes, but is not limited to, loss of trust in, and perceived unfairness of, the judicial system not only on the part of SIASC but of the general public." *Id*. at 7. SIASC suggests denying the protective order would result in a lopsided and unfair discovery process for SIASC, would be unduly burdensome, and "would send a message that this Honorable Court condones the use of materials illegally obtained, would implicate due process, and would form the basis of yet another appeal." *Id*.

Twin Falls responds that SIASC has failed to meet its burden of showing "good cause" for issuance of a protective order. Dkt. 51, at 1 (citing Fed. R. Civ. P. 26(c)). For example, while SIASC seeks to keep Twin Falls from using certain information SIASC alleges Twin Falls obtained through the PECOS system, SIASC does not specify what that information is, nor identify any information visible in the PECOS account that is not publicly available. *Id*. at 2. Nor does SIASC identify when any purported data breaches took place, or how unauthorized individuals could have gained access to SIASC's PECOS data when SIASC itself would have had to grant access to any person seeking to view its PECOS profile.[23] *Id*.

Notwithstanding SIASC's alleged failure to establish good cause, Twin Falls notes it has taken SIASC's accusation about the PECOS system seriously and has investigated SIASC's claim. Twin Falls states its investigation "has not uncovered anything to suggest that it or any of its agents has obtained any information to which it does not have rightful access." *Id*. As mentioned, Twin Falls' counsel also unequivocally confirmed that they had

---

[23] Twin Falls maintains that a person may access PECOS information only if authorized to do so by the provider itself. *See*, *e.g*., Dkt. 49-4, Ex. 2.

no copies or knowledge of any PECOS information relating to SIASC, and also confirmed no such information had been used to facilitate Twin Falls' discovery in aid of execution, when SIASC first notified Twin Falls of AmSurg's purported data breach. Dkt. 49-4, Ex. 2.

In its Reply, SIASC contends it recently discovered that AmSurg again procured illegal access to SIASC's confidential information on the PECOS database after SIASC filed its Motion for Protective Order. Dkt. 53, at 2, 4; *see also* Dkt. 53-1, at ¶¶ 10–15. SIASC states it sufficiently identified when the initial alleged data breaches took place because it narrowed the time of the initial breaches to between February 2020, and July 1, 2020. Dkt. 53-1, ¶ 7. In her attached declaration, Ms. Wensink alleges she discovered new data breaches on August 5, 2020, which must have occurred between July 1 and August 5, 2020. *Id*. at ¶¶ 10, 11–12. Although SIASC does not identify any specific classified information AmSurg could have obtained, or any information on the PECOS site that is not publicly available, SIASC contends:

> SIASC is currently investigating the data breach to determine the actual dates on which AmSurg accessed the site and how AmSurg gained such access, has submitted a request to the United States Department of Health and Human Services ("DHSS") for detailed information regarding the actions taken by Amsurg and is preparing a subpoena to the DHSS to formalize its request out of an abundance of caution as well as for the preparation of further legal action.

Dkt. 53, at 3.

The burden of showing good cause falls at all times on the party seeking protection. *Foltz v. State Farm Mut. Auto Ins. Co*., 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of

showing that specific prejudice or harm will result if no protective order is granted."); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786–87 (3d Cir. 1994) ("The burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the order."); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986) ("It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head.").

Here, even if a security breach occurred, it is unclear who (if anyone) from Twin Falls was involved and whether either AmSurg or Twin Falls obtained any confidential information at all. Moreover, Twin Falls has unequivocally confirmed, both informally and on the record, that it has not obtained any information through illegal sources for any purpose in this litigation. Dkt. 49-4, Ex. 2; Dkt. 50, at 9 n. 5. It is also unclear which documents or information (if any) should be covered by a protective order because there is no information before the Court to allow it to determine whether such information or documents are confidential.

To be sure, the Court does not condone *any* illegal activity or misconduct in seeking discovery. If AmSurg and/or Twin Falls committed the data breaches of which SIASC complains, and SIASC can identify any *specific* confidential information obtained as result, the Court will entertain a subsequent Motion for Protective Order. The Court strongly cautions Twin Falls that it will not tolerate any abuse of the discovery process, and that any information obtained illegally may not be used in future discovery or depositions.

MEMORANDUM DECISION AND ORDER - 41

However, in the absence of *any* showing that specific confidential information was either available on the PECOS website, or obtained by AmSurg and/or Twin Falls, SIASC has not met its burden of making a "particular showing" of good cause, nor has it alleged "*specific* prejudice or harm now." *Foltz*, 331 F.3d at 1131 (emphasis in original) (quoting *Beckman*, 966 F.2d at 476).

Because SIASC has not identified any trade secrets or confidential information discovered through AmSurg's purported breach, the Court would commit reversible error in granting a protective order at this time. *Foltz*, 331 F.3d at 1131 (overruling district court's blanket protective order where defendant had not asserted or shown specific harm or prejudice that would arise from disclosure of any particular information obtained through discovery). SIASC's Motion for a Protective Order is accordingly DENIED.

## IV. CONCLUSION

Twin Falls initially served SIASC with the First Requests and Notice of Deposition on March 24, 2020. More than five months later, SIASC has yet to adequately respond to the First Requests, or to appear for its Rule 30(b)(6) deposition.[24] The Surgery Center similarly ignored Twin Falls' subpoena and failed to take any action to secure the Court's protection from the subpoena prior to its deadline for compliance. While the COVID-19 pandemic may have justified some delay in providing adequate responses, there is no

---

[24] The Court would be remiss if did not advise the parties that this process may have been significantly condensed if they had simply complied with the Court's discovery procedure and contacted the Court's clerk *before* filing their respective discovery motions. Even if a discovery conference proved unsuccessful, the clerk could have advised the parties as to this Court's discovery policies and likely rulings on specific discovery issues in an attempt to avoid motion practice. The Court could also have set an expedited briefing schedule had it been contacted prior to, or even shortly after, the discovery motions were filed.

justification for SIASC's repeated failure to adequately respond to the First Requests, or to appear for its Rule 30(b)(6) deposition. Further, although the Court takes SIASC's allegations regarding AmSurg's purported security breach seriously, such allegations ultimately have nothing to do with SIASC's failure to comply with the Federal Rules of Civil Procedure and to meaningfully participate in the broad post-judgment discovery processes authorized under Federal Rule of Civil Procedure 69. The Court accordingly GRANTS both of Twin Falls' Motions to Compel and will award Twin Falls the attorney's fees it has incurred in attempting to obtain post-judgment discovery since May 13, 2020.

## V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.  Twin Falls' Motion to Compel Responses (Dkt. 39) is **GRANTED**:

    a.  SIASC must amend its interrogatory responses to Interrogatories 3–4, 6–9, and 12–14 of the First Requests, correct all material inaccuracies, remove all general and boilerplate objections, and provide full and complete responses to First Set of Interrogatories 1–14 within seven (7) days of this Order;

    b.  SIASC must provide full and truthful amended responses to the First Requests for Production 3–6, 8, 12–13, and 16, as well as a complete production of documents, as kept in the ordinary course of business, in response to First Requests for Production 1-19, within seven (7) days of the date of this Order;

2.  Twin Falls' Motion to Compel Deposition (Dkt. 40) is **GRANTED**:

    a.   SIASC's corporate representative must appear for SIASC's Rule 30(b)(6) deposition within ten (10) days of the date of this Order;

    b.   The Surgery Center's corporate representative must comply with the subpoena, produce documents, and appear for a deposition within ten (10) days of the date of this Order;

3.    Twin Falls is entitled to attorney's fees it has incurred in attempting to obtain adequate interrogatory responses and document production to the First Requests, as well as SIASC's appearance at its 30(b)(6) deposition, since May 13, 2020. Twin Falls shall submit a brief detailing such attorneys' fees and costs within fourteen (14) days of the date of this Order, with the regular briefing schedule to follow;

4.    Absent a protective order from this Court, SIASC and The Surgery Center must desist from any further failure to cooperate with discovery;

5.    SIASC's Motion for Protective Order (Dkt. 49) is **DENIED** without prejudice.

DATED: September 14, 2020

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 44