IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TWIN FALLS NSC, LLC, a Tennessee
limited liability company,

      Plaintiff,

vs.

SOUTHERN IDAHO AMBULATORY
SURGERY CENTER, LLC, an Idaho
limited liability company,

      Defendant.

Case No: 1:19-cv-00009-DCN

**MEMORANDUM DECISION AND
ORDER**

## I. INTRODUCTION

Pending before the Court is Defendant Southern Idaho Ambulatory Surgery Center, LLC's ("SIASC") "Emergency Motion for Stay of Execution and Preliminary Injunction." Dkt. 66 ("Emergency Motion"). At SIASC's request, the Court entered an expedited briefing schedule. Dkt. 67. SIASC also requests expedited review of its motion.

Having reviewed the record and briefs, the Court finds that the facts and arguments are adequately presented. Accordingly, due to SIASC's request for expedited review, and because the Court finds that the decisional process will not be significantly aided by oral argument, the Court will decide the Emergency Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

For the reasons outlined below, the Court finds good cause to DENY SIASC's Emergency Motion.

## II. BACKGROUND

The factual background of this case and Plaintiff Twin Falls NSC, LLC's ("Twin Falls") attempts to obtain post-judgment discovery have been outlined in prior orders and will not be repeated entirely here. Dkt. 32; Dkt. 54. In brief, on October 2, 2019, Twin Falls obtained a judgment from this Court in its favor confirming an underlying arbitration award in the amount of $1,230,046.23. Dkt. 32. SIASC appealed the Court's judgment to the Ninth Circuit Court of Appeals but did not file a supersedeas bond with the Court of Appeals, did not seek a stay pending appeal, and did not pay the judgment.[1] Dkt. 39, at 2.

After Twin Falls' repeated unsuccessful attempts to obtain post-judgment discovery regarding SIASC's assets, SIASC ultimately disclosed that it held cash in three bank accounts with D.L. Evans Bank. Dkt. 66-2, at 10.[2] In response to Twin Falls' Interrogatories 1 and 8, which requested identification of the total value of all cash held by SIASC, the specific accounts in which such cash was held, and each and every bank account maintained by or for SIASC since January 18, 2019, SIASC identified the same three account numbers. *Id*. at 10, 12. In addition, during his September 28, 2020 deposition, SIASC's corporate representative, Dr. H. Peter Doble II, also identified the same three account numbers with D.L. Evans Bank as the three accounts SIASC has maintained since January 1, 2018. Dkt. 66-3, at 55–56 (Rule 30(b)(6) deposition of Dr. Doble, at 47:18–23; 59:24–60:12).

---

[1] SIASC has subsequently narrowed its appeal to only the attorneys' fee award confirmed in this action. Dkt. 66-1, at 3.

[2] Unless otherwise referenced, page citations are to the ECF-generated page number for specific dockets.

On October 5, 2020, Twin Falls applied to this Court for a Writ of Execution on its full arbitration judgment against SIASC. After the period for a response from SIASC passed without any objection, the Court granted an Amended Writ of Execution on October 29, 2020 ("Amended Writ"). Dkt. 65. On November 3, 2020, the Amended Writ was delivered to D.L. Evans Bank, where SIASC and its parent entity, The Surgery Center, LLC ("TSC"), keep their accounts. Dkt. 66-1, at 3. Upon service of the Amended Writ, approximately $156,000.00 was frozen in two accounts SIASC contends belong to TSC.[3] Dkt. 66-1, at 3. SIASC suggests this has substantially impaired both SIASC and TSC's ability to do business. *Id*. at 9.

SIASC explains TSC was organized approximately a year before the judgment was awarded in the underlying arbitration and was "utilized after Twin Falls' departure from SIASC membership because of Twin Falls' failure to provide information necessary to the transition." *Id*. at 2. SIASC suggests the "entities are and always have been separate entities, keeping separate Employer Identification Numbers and bank accounts." *Id*. SIASC explains that the aforementioned discovery responses included information regarding SIASC's related entities and affiliates because Twin Falls' interrogatories specifically defined SIASC, as well as the terms "you" and "your," as: "Defendant Southern Idaho Ambulatory Surgery Center, LLC, and its officers, directors, managers, trustees, agents, employees, members, attorneys or representatives, as well as any predecessor, *successor, or other entity related to Defendant*." Dkt. 66-2, at 33 (emphasis added). SIASC notes TSC

---

[3] It appears that D.L. Evans Bank has frozen the two accounts, rather than releasing the funds to Twin Falls, pending resolution of the instant dispute regarding whether the Amended Writ should be stayed. Dkt. 66-1, at 3–4.

is neither a party to, nor has been adjudicated as having any liability in, this action. *Id*. As such, SIASC contends Twin Falls misled both this Court and D.L. Evans Bank by attempting to attach the assets of SIASC's parent entity without any legal basis for doing so.

In addition to seeking return of funds purportedly belonging to TSC, SIASC requests a general stay of execution pending resolution of the current appeal, as well as an injunction prohibiting Twin Falls from executing the judgment during the pendency of the appeal. Dkt. 66-1, at 16. SIASC proposes that, as an alternative to posting a bond pending resolution of the appeal, it will place its assets—medical equipment valued at approximately $202,676.00—as security for a stay under Federal Rule of Civil Procedure 62(b).

Twin Falls opposes both SIASC's attempt to stay execution and SIASC's alternative proposal. Twin Falls contends there is no basis to stay execution pending appeal, that the Amended Writ was proper, and that each of the four relevant factors under Federal Rule of Civil Procedure 65 weigh against granting a preliminary injunction.

## III.    ANALYSIS

### A. Stay of Execution

SIASC first requests a "general stay of execution pending resolution of the pending appeal" pursuant to Federal Rule of Civil Procedure 62. *Id*. at 2.

### 1. *Legal Standard*

Federal Rule of Civil Procedure 62(b) provides that "[a]t any time after judgment is

MEMORANDUM DECISION AND ORDER - 4

entered, a party may obtain a stay by providing a bond or other security."[4] Under Rule 62, a party is entitled to a stay of the judgment as a matter of right upon posting a bond or security. *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966). The bond or security protects the prevailing party "from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment." *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988); *see also United States v. Birdsong*, 2019 WL 1026277, at *2 (D. Mont. Mar. 4, 2019) ("The purpose of Rule 62(b)'s bond requirement is to secure the prevailing party against the risk of being unable to collect the judgment.").

"Although the Ninth Circuit has not articulated what factors should be considered when determining whether to waive the bond requirements, courts within the circuit have often considered those laid out in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988)." *San Diego Comic Convention v. Dan Farr Productions*, 2018 WL 4852199, at *2 (S.D. Cal. Oct. 5, 2018) (internal quotation marks omitted) (collecting cases). The five *Dillon* factors are:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court had in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the costs of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

---

[4] Rule 62 was amended in 2018 to reorganize and revise the provisions for staying a judgment. Rule 62(b) "carries forward in modified form the supersedeas bond provisions of former Rule 62(d)." Fed. R. Civ. P. 62 advisory committee's note to 2018 amendments. The "new rule's text makes explicit the opportunity to post security in a form other than a bond." *Id*.

*Id*. (citing *Dillon*, 866 F.2d at 904–07)

While a district court has discretion to modify or waive the bond requirement, "the burden is on the moving party to demonstrate the reasons for 'departing from the usual requirement of a full security supersedeas bond.'" *Estate of Casillas v. City of Fresno*, 2020 WL 3802749, at *1 (E.D. Cal. July 7, 2020) (quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1190 (5th Cir. 1979)); *see also Abbywho v. Interscope Records*, 2008 WL 11406049, at *4 (C.D. Cal. Aug. 25, 2008) ("If the judgment debtor is unable to post a full supersedeas bond, it is the judgment debtor's responsibility to convince the court that posting a full bond is impracticable and to propose an alternative plan[.]" (quoting *LPP Mortg. Ltd. v. Gardner*, 2005 WL 2078339, at *1 (D. Or. Aug. 16, 2005)); *Biltmore Associates, L.L.C., v. Twin City Fire Ins. Co*., 2007 WL 2422053, at *1 (D. Ariz. Aug. 22, 2007) ("[T]he posting of a bond is itself a privilege extended the judgment debtor as a price of interdicting the validity of an order to pay money. Accordingly, to depart from the usual requirement of a full security supersedeas bond the moving party must demonstrate reasons for such departure." (cleaned up)). Because a stay operates for the appellant's benefit and deprives the appellee of the immediate benefit of his judgment, "a full supersedeas bond should be the requirement in normal circumstances*." Presidio Components, Inc. v. Am. Tech. Ceramics Corp*., 2019 WL 1542110, at *3 (S.D. Cal. Apr. 8, 2019) (quoting *Fed. Prescription Serv., Inc., v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

### 2. *Analysis*

As noted, SIASC has not filed a bond or other security, as required under Rule 62(b)

in order to stay execution on Twin Falls' judgment. SIASC contends it is unable to post a bond in the full amount of the judgment. In his declaration, SIASC's corporate representative, Dr. Doble, contends:

> SIASC has attempted to obtain a litigation bond for a stay pending the appeal, but the cost of a litigation bond pending appeal was simply too high. Neither SIASC nor TSC had sufficient resources to secure a bond. SIASC's bank, D.L. Evans[,] would not extend a letter of credit for purposes of securing a bond. The condition that Twin Falls left SIASC in is the cause of this lack of sufficient resources. That condition has not improved despite best efforts on part of the doctors who have a financial interest in [SIASC].

Dkt. 66-4, ¶ 15.

SIASC's counsel, Angelo L. Rosa, attests that he attempted to obtain a litigation bond in January 2020, from Starley-Leavitt Insurance. Dkt. 66-3, ¶ 4. However, Starley-Leavitt's representative, Nikki Donnelley, advised Mr. Rosa that SIASC's owners and their spouses would have to personally guarantee the bond. Dkt. 66-3, Ex. B, at 29. Dr. Doble subsequently informed Mr. Rosa that a "collection of people to sign for the bond" was "not happening." *Id*. at 24. When Mr. Rosa advised Ms. Donnelley that the guarantee would not be "feasible or realistic," she closed the file. *Id*. at 30. In doing so, Ms. Donnelley explained, "regardless of the size, the bonding company will not consider without the personal guarantees of owners & spouses. . . . A bond is similar to a line of credit [and] guarantees are required." *Id*.

Mr. Rosa also attempted to obtain a letter of credit from D.L. Evans Bank with which to secure a bond. *Dkt.* 66-3, ¶ 8. D.L. Evans informed Mr. Rosa that it could not provide a requested letter of credit because: (1) SIASC lacked sufficient assets to serve as collateral; (2) as such, the credit would be unsecured and would have to be repaid within

three years; and (3) SIASC lacked sufficient cash flow to service such payments, which would amount to $42,000 a month. *Id*. ¶ 9; Dkt. 63-3, Ex. B, at 23.

Because it has been unable to obtain a bond, SIASC suggests it "is willing to do the following within the legal framework for providing reduced security: to place its assets—its medical equipment valued at approximately $202,676.04 . . . as security for a stay under F.R.C.P. 62(b)." Dkt. 66-1, at 8. Twin Falls opposes this proposal because the medical equipment is "woefully insufficient to protect Twin Falls' rights," and because all of SIASC's assets, including the medical equipment it proposes to pledge, are already subject to execution. Dkt. 69, at 6. Twin Falls notes that although it has refrained from executing on SIASC's equipment, it already has an absolute right to those assets by virtue of its judgment. *Id*. Further, Twin Falls contends that SIASC's documentation shows the only obstacle to obtaining a bond "was the refusal of SIASC's prosperous physician owners to guarantee the bond." Dkt. 69, at 4. In its Reply, SIASC counters that the "corporate form that limits liability exists for a reason: to limit the liability of the owners of an entity. The fact that TSC's individual owners may have the resources to secure a full bond does not change the fact that neither SIASC nor TSC can do so." Dkt. 70, at 4.

Without wading into the parties' dispute regarding whether or not SIASC's physician owners could or legally should guarantee a bond, SIASC has not met its burden of convincing the Court that departure from the usual requirement of a full security supersedeas bond is warranted. *Estate of Casillas*, 2020 WL 3802749, at *1. While the Court recognizes that it has discretion to waive the bond requirement or to permit a different form of security to guaranty the judgment in unique circumstances, the Court does

not find such circumstances have been met here. *See Rachel v. Banana Republic, Inc*., 831 F.2d 1503, 1505 n. 1 (9th Cir. 1987); *Int'l Telemeter Corp. v. Hamlin, Int'l Co*., 754 F.2d 1492, 1495 (9th Cir. 1985).

First, as SIASC itself admits, two of the *Dillon* factors clearly weigh against waiving or modifying the bond requirement. Given SIASC's representations regarding its dire financial condition, the Court is *not* confident that funds will be available to pay the judgment upon resolution of the appeal, and SIASC's ability to pay the judgment is *not* "so plain that the costs of a bond would be a waste of money." Dkt. 70, at 5; *see also Dillon*, 886 F.2d at 904.

SIASC suggests the first *Dillon* factor—the complexity of the collection process—weighs in its favor because "Twin Falls' swift execution of the writ on TSC accounts indicates the complexity of the collection process is very simple[.]" Dkt. 70, at 6. This claim ignores that Twin Falls did not obtain information about SIASC's assets—and thus could not begin to obtain the writ—until late September 2020, nearly a year after Twin Falls obtained its judgment on October 2, 2019. However, Twin Falls served SIASC with Twin Falls' First Set of Interrogatories and Requests for Documents in Aid of Execution on March 24, 2020 ("Twin Falls' First Requests"). Dkt. 54, at 2. As detailed in the Court's prior order, SIASC postponed, objected to, filed misleading or inadequate answers, and otherwise delayed responding to Twin Falls' First Requests for over six months. *Id*. at 2–19. Indeed, it was not until the Court compelled SIASC to provide adequate discovery responses and sanctioned both SIASC and its counsel that SIASC identified the bank accounts at D.L. Evans Bank. *Id.*; *see also* Dkt. 66-2, at 10–17 (providing D.L. Evans Bank

Account numbers in its Third Amended Response to Twin Falls' First Requests on September 30, 2020); *Id*. at 23 (identifying bank accounts during Rule 30(b)(6) deposition on September 28, 2020). When Twin Falls attempted to execute on such accounts, SIASC filed the instant Motion to Stay Execution and Preliminary Injunction, arguing such accounts do not belong to SIASC at all, but are instead the property of TSC. Setting aside the merits of the latter position for the moment, SIASC has shown both Twin Falls and the Court that collecting the judgment could be anything but simple.

Similarly, SIASC's conduct during discovery suggests it may take Twin Falls substantial time to obtain payment if the judgment is affirmed on appeal. The second *Dillon* factor thus also weighs against granting a stay. SIASC's contention that "Twin Falls can obtain the judgment almost immediately should the pending appeal prove unsuccessful" rings hollow in light of SIASC's significant abuse of the discovery process when Twin Falls attempted to obtain information necessary to collect on its judgment. Dkt. 70, at 6. Moreover, SIASC's representations regarding its woeful financial position also suggest that Twin Falls may not be able to obtain a judgment at all if it is required to wait to execute until the appeal is resolved.

Finally, SIASC contends the fifth *Dillon* factor weighs in its favor because posting a full bond would place other creditors in an insecure position. *Id*.; *see also* Dkt. 66-1, at 12–13. SIASC explains that the accounts Twin Falls is attempting to execute on are held at D.L. Evans Bank, the same bank that has a prior, secured interest in the accounts and a corresponding right of offset to the accounts due to a loan it has extended to SIASC. *Id*. SIASC explains:

MEMORANDUM DECISION AND ORDER - 10

> If Twin Falls confiscates the funds in these accounts, it will call SIASC to default on the loan. Thus, before any such confiscation, the bank will assert its priority, call the loan, and apply the funds to its loan. As Twin Falls is aware, there are not enough funds in the accounts to cover the judgment, much less enough to cover both the prior, secured, D.L. Evans Bank loan and the judgment. In fact, the funds would cover neither the full amount of the loan nor the full amount of the judgment.

Dkt. 66-1, at 13.

Although SIASC notes the aforementioned loan "was disclosed to Twin Falls in discovery," its contentions regarding the loan are not verified by citation to a declaration, or to any testimony by SIASC's members or owners. *Id*. Nor does SIASC identify the date or terms of the loan, or whether the loan was to both SIASC and TSC or solely to TSC. While contending the loan was to SIASC, SIASC also concludes, "[u]nless Twin Falls' goal is the complete destruction of SIASC rather than actually collecting the judgment, which is at the moment in its favor, it is irrational for it to insist upon execution of the SIASC judgment *against TSC*." *Id*. This implies that the loan was made to TSC, and that D.L. Evans Bank is not *SIASC's* prior secured creditor. SIASC's third amended response to Twin Falls' First Requests also identifies a $212,992.02 operating loan from D.L. Evans as TSC's (and not SIASC's) obligation. Dkt. 66-2, Ex. A at 11. Given this inconsistency, the Court is unable to determine whether denying a stay would place SIASC's other creditors in an unsecure position.

A judgment debtor has the burden to "objectively demonstrate" the reasons for departing from the usual requirement of a full supersedeas bond. *Poplar Grove*, 600 F.2d at 1191. SIASC has not met this burden. Without further evidence regarding the loan held by D.L. Evans Bank, it is impossible for the Court to assess whether seizure of SIASC's

MEMORANDUM DECISION AND ORDER - 11

accounts would place SIASC's other creditors in an unsecure position. *Taylor v. Horizon Distrib., Inc.*, 2010 WL 582108, at *1 (D. Ariz. Feb. 17, 2010) (declining the waive bond requirement where judgment debtor did not provide evidence to support his contentions that his other creditors would be harmed absent a stay pending appeal). Moreover, whether other creditors would be placed in an unsecure position is, like the other *Dillon* factors, "but one of many factors the Court is to consider in connection with a request to waive a supersedeas bond." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1028 (N.D. Cal. 2012). Even if SIASC had sufficiently established harm to other creditors, the other four *Dillon* factors weigh against granting a stay of execution.[5]

Finally, in determining whether to modify the bond requirement by accepting a substitute security, the court must consider whether the appellant proposes an alternate form of security that protects the judgment creditor's interest in the full judgment. *Int'l Telemeter Corp.*, 754 F.2d at 1495. An alternative security proposal should *"furnish equal protection to the judgment creditor"* as would a full supersedeas bond. *SEC v. Heart Tronics, Inc.*, 2016 WL 9083366, at *3 (C.D. Cal. June 3, 2016) (emphasis in original) (quoting *Poplar Grove*, 600 F.2d at 1191).

Here, SIASC's proposed security is medical equipment that it alleges is "valued at

---

[5] Other courts have held that an inability to secure a bond is, in fact, proof that a stay should not be granted. *Max Sound Corp. v. Google LLC*, 2019 WL 480544, at *2 (N.D. Cal. Feb. 7, 2019) ("Max Sound . . . argues it will suffer irreparable financial harm if the judgment is not stayed. But Max Sound's financial insecurity weighs in favor of requiring a bond or security."); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 649 (S.D.N.Y. 2018) ("[T]he fact that the need to post a bond may impair a business is irrelevant. The bond requirement is not designed to protect the judgment debtor's ability to continue in business." (cleaned up)); *Howard Town Ctr. Dev., LLC v. Howard Univ.*, 288 F. Supp. 3d 11, 15 (D.D.C. 2017) (requiring full bond partly due to court's "great concern" with debtor's "inability or unwillingness to satisfy the judgment").

approximately $202,676.00." Dkt. 66-1, at 8. Even if the equipment appraises at this value, it represents less than 15% of Twin Falls' judgment. Further, all of SIASC's assets, including this equipment, are already subject to execution. *Christmas v. Russell*, 72 U.S. 290, 305 (1866) ("[S]o long as the judgment remains in force it is of itself conclusive of the right of the plaintiff to the thing adjudged in his favor, and gives him right to process, mesne or final, as the case may be, to execute the judgment."). Moreover, as Twin Falls notes, SIASC "has done absolutely nothing for more than a year—including months of discovery in aid of execution—to request or offer alternative security. SIASC came forward with this request only after Twin Falls made attempts to collect what it is owed." Dkt. 69, at 4. Regardless of the timing of its proposal, SIASC's alternative security is insufficient to secure Twin Falls against the risk of being unable to collect the judgment. *See, e.g., Birdsong*, 2019 WL 1026277, at *2.

It is clear that Twin Falls has a right to seize assets belonging to SIASC. *Columbia Pictures Tel., Inc. v. Krypton Broad. of Birmingham*, 259 F.3d 1186, 1197 (9th Cir. 2001) ("[A] prevailing plaintiff is entitled to execute upon a judgment" as soon as it becomes final under Rule 62(a)). While SIASC cites three cases where courts exercised their discretion to allow a judgment debtor to post a much smaller security than a full bond to stay execution,[6] the Court does not find such remedy is appropriate where, as here, at least four of the five *Dillon* factors weigh against granting such relief and where SIASC's proposed security would not adequately secure Twin Falls' judgment.[7] *Fed. Prescription*

---

[6] Dkt. 66-1, at 8 notes 1–3; Dkt. 70, at 4.

*Serv.*, 636 F.2d at 760 ("[T]he district court in its discretion may order partially secured or unsecured stays *if* they do not unduly endanger the judgment creditor's interest in ultimate recovery.") (emphasis added); *NLRB*, 859 F.2d at 819 (explaining the purpose of a bond is to protect the prevailing party against a later uncollectable judgment).

In the absence of some effort by SIASC to propose a viable security alternative that would protect Twin Falls' interests in the judgment, SIASC's request for a general stay of execution pending resolution of its appeal is DENIED. Execution of the judgment will not be stayed unless SIASC files a supersedeas bond that is approved by the Court.

## B. Preliminary Injunction

SIASC also seeks "an injunction prohibiting the improper use of the Amended Writ of Execution to seize assets not owned by SIASC pursuant to [Federal Rule of Civil Procedure 65]." Dkt. 66-1, at 2.

### 1. Legal Standard

Both parties suggest the appropriate legal standard is Federal Rule of Civil Procedure 65. Dkt. 66-1, at 7; Dkt. 69, at 10. Under Rule 65, a preliminary injunction is proper if the movant establishes that: (1) it is likely to succeed on the merits; (2) it will suffer irreparable harm in the absence of an injunction; (3) the balance of hardships

---

[7] Although, as SIASC notes, the amendments to Rule 62 permit flexibility in the type of security required to obtain a stay, the purpose of Rule 62's bond requirement remains the same—to secure the prevailing party against the risk of being unable to collect the judgment. *Birdsong*, 2019 WL 1026277, at *2. Here, even without weighing the *Dillon* factors, the Court finds SIASC's proposed security is not adequate to secure Twin Falls' judgment. *See, e.g., Pacific Lim Land Dev., LLC v. Imperial Pacific Int'l*, 2020 WL 4361150, at *3 (D. N. Mariana Islands, June 4, 2020) ("Considering the purpose of Rule 62(b) is to protect the judgment creditor's interest against the risk of a later uncollectible judgment, this Court cannot accept an alternative security that will not maintain its value during the pendency of an appeal.").

between the moving party and the creditor tips in the moving party's favor; and (iv) the public interest favors the injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

However, many courts have held that such factors, while applicable to appeals involving injunctive relief, do not apply to motions to stay execution of money judgments. *Pac. Rim*, 2020 WL 4361150, at *2 (citing *Compania de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua*, 2019 WL 8223560, at *3 (D. Colo. May 21, 2019); *John Wiley & Sons, Inc.* v. 327 F. Supp. 3d at 649, 649 (S.D.N.Y. 2018); *Rajala v. Gardner*, 2014 WL 4455038, at *1 n. 4 (D. Kan. Sept. 10, 2014); *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2013 WL 12134035, at *1 n.1 (D. Mont. May 13, 2013); *Bolt v. Merrimack Pharm., Inc.*, 2005 WL 2298423, at *2 (E.D. Cal. Sept. 20, 2005); *Schreiber v. Kellogg*, 839 F. Supp. 1157, 1161 (E.D. Pa. 1993)).

Such courts have held that instead of the traditional factors warranting injunctive relief, the criteria in *Dillon* "more directly address the primary purpose of [Rule 62(b)] to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing money if the decision is reversed." *Pacific Rim*, 2020 WL 4361150, at *2 (quoting *In re Nassau Cty. Strip Search Cases*, 783 F.3d 414, 418 (2d Cir. 2015)). The Court agrees. "[C]ourts in this circuit have held that the preliminary injunction test specifically applies to a stay of injunctive relief pursuant to Federal Rule of Civil Procedure 62(c) and is irrelevant in a case involving a monetary judgment." *Sarver v. Hurt Locker LLC*, 2012 WL 12892147, at *2 (C.D. Cal. Feb. 2, 2012) (collecting cases); *see also Max Sound*, 2019 WL 480544, at *2 ("Max Sound does not engage with the *Dillon*

factors, but rather, argues that the Court should apply the factors used to weigh a preliminary injunction. That is not correct."). Instead, a request for a stay of a money judgment pending appeal is governed by Rule 62(b), which provides for a stay of execution upon posting a bond or other security.

### 2. Analysis

SIASC is imprecise in its request for injunctive relief. It alternates between suggesting that Twin Falls should be enjoined entirely from executing its judgment during the pendency of the appeal and contending an injunction is necessary to "prohibit[] the improper use of the Amended Writ of Execution to seize assets not owned by SIASC[.]" Dkt. 66-1, at 1. For instance, SIASC addresses how each of the four Rule 65 factors purportedly weigh in favor of generally enjoining Twin Falls from executing its judgment against SIASC. *Id*. at 9–12. At the same time, SIASC contends: "TSC is a distinct entity and is treated as such. Twin Falls has no present entitlement to any of TSC's assets. Had the Writ been issued against the proper assets of the judgment-debtor, SIASC, and had funds been drained from its accounts, the result might be different." Dkt. 66-1, at 9, *see also id*. at 13–16. Further, SIASC's Reply brief is primarily devoted to arguing "this Court is not empowered to issue writs against the property of third-parties who are not adjudicated as liable, nor can it summarily make findings of liability without giving TSC the opportunity to exercise its due process rights." Dkt. 70, at 3. The Court thus addresses two apparent requests for injunctive relief—one by SIASC and the other by TSC.

### a. SIASC's right to an injunction

To the extent SIASC seeks a preliminary injunction prohibiting Twin Falls from

MEMORANDUM DECISION AND ORDER - 16

executing its judgment against SIASC, such request is appropriately denied. For the reasons outlined above, the *Dillon* factors weigh against granting a preliminary injunction prohibiting Twin Falls from executing its judgment during the pendency of the appeal.

To the extent such standards are applicable, the Court also finds "whether the stay applicant has made a strong showing that he is likely to succeed on the merits"; "whether the applicant will be irreparably injured absent a stay"; "whether the issuance of the stay will substantially injure the other parties interested in the proceeding"; and "where the public interest lies" also weigh against granting an injunction. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)) ("*Hilton* factors").

First, SIASC is not likely to prevail on the merits of its appeal. As mentioned, SIASC has narrowed its appeal of the judgment to only the attorneys' fee award confirmed by this Court. SIASC suggests the Court's confirmation of the fee award will be reversed on appeal because the arbitrator awarded hourly rates contrary to the forum/venue selection provision of the parties' agreement. Dkt. 66-1, at 11. However, as the Court explained in its decision confirming the arbitration award, an arbitral decision "even arguably construing or applying the [parties'] contract must stand, regardless of a court's view of its (de)merits." Dkt. 32, at 21 (quoting *Eastern Assoc. Coal Corp. v. Mine Workers*, 521 U.S. 57, 62 (2000) (alteration in *Eastern*). Because, when considering an arbitrator's interpretation of a contract, the sole question for a court is whether the arbitrator interpreted the parties' contract, and not whether she got its meaning right or wrong, the Court would have committed reversible error had it not confirmed the arbitration award. *Oxford Health*,

569 U.S. 564, 569 (2017); *see also* Dkt. 32, at 22–24 (detailing how the arbitrator arguably applied the forum selection clause of the parties' agreement in her attorneys' fee award). SIASC does not identify how it can overcome this incredibly high standard required to set aside an arbitration award. *Oxford Health*, 569 U.S. at 572 ("convincing a court of an arbitrator's error—even his grave error—is not enough."). As such, SIASC is unlikely to succeed on the merits of its appeal.

Next, "monetary injury is not normally considered irreparable." *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 993 (9th Cir. 2019) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980)). Although being driven out of business may be sufficient to establish irreparable harm, *Am. Passage Media Corp. v. Cass Comm'n, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985), here the precariousness of SIASC's financial health also supports finding that *Twin Falls* would be substantially injured if it must delay enforcement of its judgment. *Pac. Rim Land Dev.*, 2020 WL 4361150, at *3. The second and third *Hilton* factors are a wash, as one weighs in SIASC's favor and the other weighs in favor of Twin Falls.

Finally, with respect to the public interest, SIASC argues the public will suffer if SIASC is forced to close since SIASC is "a small outpatient ambulatory surgery center in rural Idaho operating to provide patients with limited health care more affordable health care[.]" Dkt. 66-1, at 12. However, SIASC has not offered any evidence that, given its dire financial condition, it will not close even if the Court grants enjoins Twin Falls from enforcing its judgment. Indeed, well before seeking the instant injunction, SIASC advised the Court that "SIASC and its parent company are in bad financial condition and have been

for several years," and that its financial records portray "a dismal financial portrait of SIASC's financial condition[.]" Dkt. 49-4, ¶ 13; Dkt. 53, at 2. This Court also rejects the implication that Twin Falls should be forced to risk losing its judgment all together if it would help SIASC stay in business.

Regardless of which party is better financially equipped to withstand the "blow" of losing the funds in question, the reality is that SIASC lost during the arbitration, lost when attempting to overturn the arbitrator's judgment in this Court, and, as such, has a twice-confirmed legal obligation to Twin Falls. Dkt. 66-1, at 11. Although SIASC certainly has a right to appeal the Court's judgment, this does not mean that Twin Falls' right to enforce its judgment must yield. The public interest lies with "the uniform application of the law to all members of this community" and the Court finds SIASC is not exempt from obtaining a sufficient bond to secure the judgment despite its financial condition. *Pac. Rim Land. Dev.*, 2020 WL 4361150, at *3.

As both the *Dillon* and *Hilton* factors weigh in Twin Falls' favor, SIASC's request for a preliminary injunction prohibiting Twin Falls from executing the judgment during the pendency of the appeal is appropriately DENIED.

### b.  TSC's right to an injunction

TSC's request for an injunction presents a more difficult question. TSC is not a party in this case and is not the named judgment debtor. Although Twin Falls highlights that SIASC itself identified the D.L. Evans' bank accounts as belonging to SIASC, Twin Falls does not address SIASC's argument that it did so because Twin Falls defined "SIASC" to include SIASC's successor "or any other entity related to SIASC." *See, e.g.*, Dkt. 66-1, at

4. In fact, Twin Falls does not respond to any of SIASC's arguments regarding why TSC is not liable for the judgment. Dkt. 66-1, at 13–16. *See generally* Dkt. 69. While Twin Falls suggests SIASC has fraudulently transferred its assets to TSC, it also notes SIASC's purported fraudulent transfer is "an issue for another day, and Twin Falls does not seek to execute on any of [the] assets that do not currently belong to SIASC."[8] Dkt. 69, at 3 n. 1.

However, it is also not clear that Twin Falls has improperly attempted to execute the judgment on TSC's accounts, as SIASC's claims. For instance, as mentioned, SIASC argues that it identified the D.L. Evans bank accounts belonging to TSC in its interrogatories because Twin Falls' discovery requests defined SIASC to include affiliates and related entities of SIASC. Dkt. 66-1, at 4. In its responses, SIASC identified the three D.L. Evans bank accounts without specifying whether they belonged to SIASC or to TSC. Specifically, in response to Interrogatory 1, wherein Twin Falls requested the total value of all cash held by SIASC and identification with specificity each account in which such cash is held, SIASC responded:

| Amount | Name of Bank Account and Account Nos. |
| --- | --- |
| $32, 901.00 | DL Evans XXXX9179 |
| $10,305.58 | DL Evans XXXX7422[9] |
| $114,141.8585 | DL Evans XXXX9462 |

Dkt. 66-2, Ex. A at 10.

---

[8] Twin Falls does state that "SIASC's own documents and admissions plainly show that the money in [the three D.L. Evans] bank accounts was derived entirely from the use of SIASC's facilities, equipment, billing contracts, billing numbers and employees." *Id.* at 9, citing 69-1, Ex. 1 (deposition transcript of SIASC's former administrator, Debbie Wensink) at 44:20–24; 45:14–19. However, the testimony Twin Falls cites does not make clear that the money in TSC's accounts was derived from SIASC. At this point, the Court lacks evidence to determine whether or not the funds in TSC's accounts belong to SIASC.

[9] This account is in SIASC's name. Dkt. 66-2, at 44. The other two are under TSC's name. Dkt. 66-3, Ex. F.

In response to Interrogatory 8, which sought identification of each and every bank account maintained by or for SIASC since January 1, 2018, including the specific location, financial institution, account number and current balance of each said account, SIASC responded:

Balances as of 9/24/2020:

DL Evans XXXX7422     $10,305.58
DL Evans XXXXX9462    $114,141.85
DL Evans XXXXX9179    $32,901.00 [PREVIOUS RESPONSE ENTERED IN ERROR BY ADMINISTRATOR]

*Id*. at 12.

Yet, in other discovery responses, SIASC delineated between SIASC and TSC where the response apparently varied depending on the specific entity. For instance, in response Interrogatory 6, which sought, "the amount and nature of all loans and other debts, including all accounts payable, currently owed by [SIASC]," SIASC responded:

As of 9/24/2020:

$212,992.02 Operating Loan DL Evans          **[TSC Obligation**]
$26,509.04 SIMP (2018 property tax Twin Falls County) **[SIASC Obligation**]
$210,000 PPP loan (if not forgiven)          **[TSC Obligation**]
$401,993.34 Accounts payable          **[TSC Obligation**]

*Id*. at 11–12 (emphasis in original).

SIASC's failure to differentiate between entities with respect to ownership of its bank accounts, while doing so elsewhere, begs the question: how can Twin Falls and the Court be assured that SIASC's current claim that two of the accounts belong solely to TSC is accurate? SIASC's corporate representative, Dr. Doble, did not suggest that the funds in

any of the three accounts belonged to TSC during his Rule 30(b)(6) deposition.[10] When

questioning Dr. Doble, Twin Falls' counsel stated:

> Q. All right. Interrogatory number 1 says, 'State the total value of all cash
> held by,' again it says Sawtooth, but I'll remind you that everywhere in this
> document that Sawtooth is mentioned, it is defined to mean SIASC. So 'State
> the total value of all cash held by SIASC and identify with specificity each
> account in which such cash is held.' Do you see that?
>
> A. Yes.
>
> Q. Do you understand that question?
>
> A. I do.
>
> Q. The answer . . . lists three different amounts, 32,000, 10,000, 114,000 and
> apparently accounts held at D.L. Evans Bank. Is that right?
>
> A. That's correct.

Dkt. 66-3, at 54 (Doble 30(b)(6) Deposition at 43:17–25, 44:1–6). SIASC's counsel

suggests that Twin Falls' interpreted Dr. Doble's responses regarding SIASC's bank

accounts during his deposition incorrectly, but doesn't explain how the aforementioned

testimony could be interpreted to mean that funds in one of the three accounts belonged to

SIASC, but funds in the other two accounts belonged to TSC. Dkt. 66-3, ¶ 18. However,

in support of the instant motion, Dr. Doble has offered a sworn declaration stating, "TSC

is the owner of the bank accounts in question in this motion – those with account numbers

ending in 9179 and 9462 – with the exception of the account number ending in 7422, which

is SIASC's." Dkt. 66-4, ¶ 7.

---

[10] Or, if he did, SIASC has not provided such portions of Dr. Doble's Rule 30(b)(6) deposition transcript
to the Court.

If two of the three accounts identified in the Amended Writ of Execution belong to TSC, then TSC is entitled to relief. However, since TSC is not the judgment debtor, the *Dillon* factors do not apply to its request for injunctive relief and neither party briefs the *Hilton* factors with respect to TSC's request for an injunction. The Court declines to address whether TSC meets the criteria for injunctive relief sua sponte. *Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on advocates to inform the discussion and raise the issues to the court . . . . [W]e have held firm against considering arguments that are not briefed."). Nor is it clear that TSC can appropriately bring its request for an injunction pending SIASC's appeal since it is not a party to this action. In the absence of guidance with respect to the appropriate procedure, briefing on the preliminary injunction factors with respect to TSC, or sufficient evidence from either side regarding whether the funds in the D.L. Evans accounts do or do not belong solely to TSC, the Court is frankly at a loss as to the appropriate remedy with respect to TSC.

Clearly, Twin Falls does not have a right to execute on TSC's assets. If this is the case, then the Amended Writ of Execution should again be amended so that only accounts belonging to SIASC are identified. If Twin Falls knew before it obtained the Amended Writ of Execution that the funds in the D.L. Evans accounts belong to TSC, then such conduct may be sanctionable. So too may be continuing to tie up TSC's assets with an improper writ. Twin Falls is advised to take any and all necessary steps to avoid further tying up assets that belong to TSC. At the same time, SIASC is also advised that the Court is not playing games and may sanction SIASC if its representations in the instant motion

regarding account ownership prove untrue. Ultimately, however, the Court cannot enter an injunction prohibiting the improper use of the Amended Writ to seize assets not owned by SIASC in the absence of SIASC's engagement with any of the four factors required for injunctive relief with respect to TSC, and without first being convinced that the funds in fact belong to TSC.

## IV.   ORDER

1.  SIASC's Motion for Emergency Relief (Dkt. 66) is **DENIED**.[11]

DATED: December 10, 2020

David C. Nye
Chief U.S. District Court Judge

---

[11] The Court may reconsider granting some form of injunctive or other relief with respect to TSC if TSC properly establishes it is entitled to it. In the meantime, counsel for both sides are directed to make every effort to resolve this matter without requiring further intervention by the Court.